**4901 MAIN, INC., Appellant**

v.

**TAS AUTOMOTIVE, INC., d/b/a European Autoworks of Houston, Appellee.**

No. 14–04–00563–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 2, 2006.

---

Pete T. Patterson, Houston, for appellants.

John K. Grubb, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

This is a breach of contract case. Asserting two issues, appellant, 4901 Main, Inc. (hereinafter Main) appeals a judgment in favor of appellee, TAS Automotive, Inc., d/b/a/ European Autoworks of Houston (hereinafter TAS). TAS asserts one crosspoint. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 1, 1998, Main leased commercial property in Houston to TAS for use as an automobile repair shop. TAS accepted occupancy of the premises "as is" and acknowledged the premises were suitable for TAS's intended purpose.[1] TAS agreed to maintain and repair the premises, except for roof and structural repairs.[2] If Main failed to comply with a lease provision, the lease agreement entitled TAS to sue Main for damages or terminate the lease.[3]

---

1. Under the heading "LEASE CLAUSES AND COVENANTS," section A(2) of the lease provides, as follows: *"Tenant makes the following agreements and promises to:* Accept occupancy of the premises 'as is' and acknowledge suitability of the premises for the uses intended by Tenant." (emphasis in original).

2. Section A(9) of the lease provides, as follows: *"Tenant makes the following agreements*

*and promises to:* Make repairs, replacement of elements, and perform maintenance of all elements of Tenant's premises except the following: roof repairs, structural repairs." (emphasis in original).

3. Sections E(34) and E(35) of the lease provide, as follows:

Events of Landlord Default. Landlord may default in this Lease by failure to com-

On September 13, 1999, TAS notified Main by certified mail, return receipt requested, about various roof and structural damage at the leased property needing repair.[4] On January 11, 2000, TAS sent another letter to Main expressing the need for roof and structural repairs and Main's contractual responsibility to make them. Main responded to TAS's letters on January 26, 2000, stating it would review the items deemed in need of repair. In August 2001, TAS filed suit against Main for failure to comply with the lease agreement.

Panagiotis Smirnis, TAS's owner, testified he first complained of a leaky roof around November 1998, a few months after moving into the property. Leo Kozadinos, Main's president, testified a roofer inspected the building's roof shortly after Smirnis' complaint. Kozadinos testified the roofer repaired leaks in the glass door panes and not the roof. Kozadinos also testified his roofer inspected the property on at least two more occasions, but he could produce no documentation of the roofer's additional inspections because the roofer did not bill Main. Smirnis testified the roof was not inspected until after TAS filed suit. Smirnis also contests the assertion no leaks exist. In support of Smirnis' testimony, the court admitted into evidence more than 100 pictures showing apparent roof leakage, structural damage, and equipment damaged by water.

At the jury charge conference, TAS and Main objected to the trial court's proposed charge and both made requests, which were refused. The jury found: (1) Main inexcusably failed to comply with the lease agreement; and (2) Main did not breach an implied warranty of suitability that was a producing cause of damages to TAS. The jury awarded TAS $10,000 in damages and $27,000 in attorney's fees. On appeal, Main asserts two issues and TAS brings one cross-point, all alleging charge error. Main contends (1) the trial court erred by not submitting an instruction and a definition of waiver with jury questions one and three and (2) the trial court erred by using the word "and" instead of "or" in jury question six. In one cross-point, TAS contends the trial court erred by refusing to submit its requested question about abatement of rent.

## DISCUSSION

### I. Charge Error: Standard of Review

[1–6] Texas Rule of Civil Procedure 278 requires a trial court to submit questions, instructions and definitions raised by the written pleadings and the evidence. TEX.R. CIV. P. 278; see *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). Rule 278 is a directive to trial courts requiring them to submit requested questions to the jury if pleadings and any evidence support those questions. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992); *Roberts v. S. Pacific Transp. Co.*, 44 S.W.3d 183, 187 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). A trial court

---

ply with lease provisions within 30 days after notice by Tenant, or by the failure to provide an essential service to Tenant as defined by this lease. Tenant may terminate the lease upon 30 days continued failure by Landlord to comply or to provide services after Landlord has been noticed by the Tenant of such event of default.

Tenant Remedies Upon Landlord Default. Tenant's remedies upon default by Landlord, as specified above, include suit for damages or termination of the lease 30 days following Tenant's notice of Landlord's failure to perform its obligations.

4. Section E(47) defines Notices, as follows: "Notices. Notices required by this lease shall be deemed effective upon deposit with the regular United States Mail addressed to the address shown herein, such deposit to be made with postage affixed for certified mail, return receipt requested."

may refuse to submit a question to the jury if: (1) there is no evidence; (2) there are no pleadings; or (3) the issue is uncontroverted. *Island Recreational Development Corp. v. Republic of Tex. Savings Assoc.*, 710 S.W.2d 551, 555 (Tex.1986). If there is some evidence to support the submission, the trial court commits reversible error if it fails to submit the instruction. *Smith–Hamm, Inc. v. Equip. Connection*, 946 S.W.2d 458, 462 (Tex.App.-Houston [14th Dist.] 1997, no writ). We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex.2000). The trial court has considerable discretion to determine necessary and proper jury instructions. *Id.* A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003).

▇▇▇ If a trial court abuses its discretion when it submits an instruction to the jury, we do not reverse in the absence of harm. *See Lone Star Gas Co. v. Lemond*, 897 S.W.2d 755, 756 (Tex.1995). Harm occurs when the error in the charge probably caused the rendition of an improper judgment, or prevented appellant from properly presenting the case to the court of appeals. Tex.R. App. P. 44.1(a); *Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex.2003). To determine harm, the appellate court must consider the entire record, including the parties' pleadings, the evidence, and the charge. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). Jury charge error is reversible only if, when viewed in light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper

judgment. *Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 110 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

## II. Instruction and Definition of Waiver

In its first issue, Main contends the trial court erred because it refused to include an instruction on and a definition of waiver with jury questions one and three. Jury question one asked: "Did 4901 Main[,] Inc. fail to comply with the lease agreement?" If the jury answered question one affirmatively, the charge instructed the jury to answer the following question: "Was 4901 Main, Inc.'s failure to comply with the agreement in Question 1 excused?" Main objected to the court's instruction and requested the following question, instruction, and definition of waiver:

- Did 4901 Main, Inc. fail to comply with the lease agreement with TAS because of its failure to repair defects to the roof, if any?
- Failure to comply by 4901 Main, Inc. is excused if compliance is waived by TAS.
- Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

The trial court refused Main's request. The jury found Main failed to comply with the lease agreement, and Main's failure to comply was not excused.

Jury question three asked:
- Was the failure, if any, [of] 4901 Main, Inc. to comply with an implied warranty of suitability a producing cause of damages to TAS Automotive, Inc.?
- "Failure to comply with an implied warranty of suitability" means: Furnishing a premises that was not suitable for a commercial purpose if 4901

Main, Inc. had reason to know of latent defects in the facilities that are vital to the use of the premises for their intended commercial purpose. You are further instructed that when parties to a lease expressly agree that the tenant will repair certain defects, then provisions of the lease will control.

- "Producing cause" means an efficient, exciting or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

Main objected to the court's instruction and requested an instruction on and definition of waiver. The trial court refused Main's request. The jury answered "no" to question three.

Main argues sections A(2), E(44), and E(46) of the lease agreement "obliterate" both of TAS's cause of action. The sections upon which Main relies are an "as is" clause, a merger clause, and a limitation of warranties clause. Main contends, by signing the lease agreement containing these three clauses, TAS waived its claims for damages to the roof. However, Main's argument omits a discussion of section A(9), which explicitly requires Main to make repairs to the roof.

■■■■ Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003); *Smith–Hamm*, 946 S.W.2d at 463. Waiver is an independent ground of recovery, and to establish such a ground, a party must specifically plead and prove an independent reason that a plaintiff cannot recover. *See* Tex.R. Civ. P. 94. A trial court would deny a party a viable affirmative defense if it refused to submit a question to the jury if the record revealed that the party properly pleaded and provided evidence of the affirmative defense at trial. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992). However, if no evidence exists to warrant the submission, the trial court's refusal to submit a question is correct. *See TA Operating Corp. v. Solar Applications Eng'rng., Inc.*, 191 S.W.3d 173, No. 04–04–00180–CV, 2005 WL 2401879, at *5 (Tex.App.-San Antonio Sept. 28, 2005, pet. filed).

■■■ Main's answer to this suit pleaded waiver and seven other affirmative defenses without including any facts as to why the defenses were applicable. On direct examination, Main's trial counsel asked two waiver questions of Kozadinos, Main's president:

Q. Did you recall a paragraph in this lease—there's a lot of information in this lease, I guess we did agree. *But I have an understanding that there is both a waiver clause and an as-is clause in this lease?*

A. Correct.

Q. What is your understanding of the as-is clause in that lease?

A. Well, it just basically means that you accept the property in its current condition as it is. Just like buying a used car as-is.

Q. *And furthermore with respect to the waiver paragraph, what rights in your opinion does that give the tenant, Mr. Smirnis, with respect to the property?*

A. Waiver basically says that if I or the landlord fails in their responsibility in any way that the tenant is entitled to walk away from the lease.

(emphasis added). This testimony does not explain how TAS may have waived its rights to require Main to repair the roof, nor does it explain what section of the

lease Kozadinos described.[5] This testimony seems to describe only one of TAS's remedies if Main breaches the agreement—the right to unilaterally terminate the contact, which is not the same as a waiver of rights.[6] Section A(9) of the lease agreement requires Main to repair the roof and structure of the building. Main presented no evidence TAS waived enforcement of Main's duty to make roof and structural repairs to the leased premises. Indeed, Kozadinos admitted during his testimony that Main has a duty to repair a leaking roof.

■ A plea of waiver unsupported by any evidence is insufficient to support a jury question on that issue. *See Fadia v. Unauthorized Practice of Law Committee*, 830 S.W.2d 162, 165 (Tex.App.-Dallas 1992, writ denied). No evidence exists showing how TAS either intentionally relinquished a known right or engaged in conduct inconsistent with claiming that right. Main has failed to bring forward facts showing how TAS waived its right to sue Main for roof and structural repairs. Because the trial court may refuse to submit a jury question if there is no evidence supporting that question, we hold the trial court did not abuse its discretion by refusing to include an instruction on and definition of waiver in jury question one.

Additionally, the jury answered question three about the implied warranty of suitability in favor of Main. Even if the trial court abused its discretion by not submit-

ting the jury charge as requested on question three, Main was not harmed because the jury did not find Main liable on the issue of an implied warranty of suitability. *See* Tex.R.App. P. 44.1(a); *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex.1980) (holding charge error reversible only when harm is suffered by the complaining party).

We overrule Main's first issue.

### III. Attorney's Fees

In its second issue, Main contends the trial court erred in submitting jury question six regarding Main's claim for attorney's fees. Specifically, Main argues the trial court erred because the jury was instructed to answer question six only if it determined Main did not breach the lease agreement (question one) *and* did not breach an implied warranty of suitability (question three). Main claims it was entitled to collect attorney's fees if it successfully defended either of the two claims, instead of having to successfully defend both claims.[7]

■ An award of attorney's fees must be based on statutory or contractual authority. *Jackson v. Biotectronics, Inc.*, 937 S.W.2d 38, 44 (Tex.App.-Houston [14th Dist.] 1996, no writ); *see, e.g.*, Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997) (providing a prevailing party to a cause of action may recover attorney's fees in a suit on an oral or written contract).

---

5. The only clause in the lease agreement pertaining to waiver is entitled, "Waiver of Remedies and Mitigation of Damages," where the parties agreed their rights to enforce remedies would *not* be waived even when one party fails to enforce or otherwise delays enforcement of a remedy. In addition to the lease agreement signed by the parties, they also signed a sales agreement for the purchase of equipment. That sales agreement also contains a similar non-waiver clause.

6. TAS's other remedy in the event of landlord default is the initiation of litigation, the remedy chosen by TAS.

7. The section of the jury charge Main complains of provides the following: "If your answers to Questions 1 *and* 3 are 'No', [sic] than [sic] answer Question 6. Otherwise, do not answer Question 6." (emphasis added). Main argues the trial court should have included the word "or" instead of "and."

In claiming its entitlement to attorney's fees, Main relies on section E(42) of the lease agreement, which provides as follows: "Attorney Fees. The parties acknowledge and agree that the prevailing party in any lawsuit regarding this lease shall be entitled to recovery of reasonable attorney's fees for the costs of prosecuting or defending such lawsuit." Main contends it is a "prevailing party" entitled to attorney's fees since the jury answered question three in its favor.

This court has defined a "prevailing party" as the party who successfully prosecutes or defends against an action, prevailing on the main issue. *Fed. Deposit Ins. Corp. v. Graham,* 882 S.W.2d 890, 900 (Tex.App.-Houston [14th Dist.] 1994, no writ) (citing BLACK'S LAW DICTIONARY 1352 (4th ed. rev.1968)); *cf. Flagship Hotel, Ltd. v. City of Galveston,* 117 S.W.3d 552, 564 (Tex.App.-Texarkana 2003, pet. denied) (defining "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded" based on the 1999 edition of Black's Law Dictionary) (alteration in original). In other words, the prevailing party is the one vindicated by the trial court's judgment. *City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.-Amarillo 1997, pet. denied); *Dear v. City of Irving,* 902 S.W.2d 731, 739 (Tex.App.-Austin 1995, writ denied). A determination of whether a party is the prevailing or successful party must be based upon success on the merits. *Johns v. Ram–Forwarding, Inc.,* 29 S.W.3d 635, 638 (Tex.App.-Houston [1st Dist.] 2000, no pet); *Perez v. Baker Packers,* 694 S.W.2d 138, 143 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). Parties to a lease agreement may adopt a more liberal standard for recovery of attorney's fees in their contract, and the courts will be bound by their choice. *See One Call Sys., Inc. v. Houston Lighting &* *Power Co.,* 936 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (interpreting the language in the parties' contract as more liberally allowing for attorneys fees than Texas Civil Practices and Remedies Code section 38.001). Therefore, the parties here could have, but failed to, provide a definition of "prevailing party" in the lease.

Main, however, does not cite or argue *any* legal authority supporting its assertion that it is a "prevailing party" under the terms of this lease agreement. Additionally, Main does not explain how the term "prevailing party" in the lease agreement adopts a more liberal standard for recovery of attorney's fees than the customary definitions. We hold Main has not adequately briefed this issue for appellate review and has waived this claim on appeal. *See* TEX.R.APP. P. 38.1(h); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex. 1983); *Miksch v. Exxon Corp.,* 979 S.W.2d 700, 706 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

Moreover, the trial court did not err in its submission of question six regarding Main's entitlement to collect attorney's fees. The core of the controversy in this case was TAS's claim for damages resulting from Main's default, either by breaching the lease agreement or an implied warranty of suitability. The jury found Main failed to comply with the lease agreement and awarded TAS damages. Because the primary issue in this case was damages from Main's default, Main's successful defense of an alternative legal theory of liability based on the same facts as those used to find it liable did not establish Main as a prevailing party under the lease. *See Wilbur & Village Lane Ltd. v. Cinemark Corp.,* No. 14–00–00760–CV, 2002 WL 1041083, at *8 (Tex.App.-Houston [14th Dist.] May 23, 2002, no pet.) (not designated for publication) (holding the

prevailing party at trial was the party for whom the jury rendered its verdict). The trial court did not abuse its discretion by requiring Main to successfully defend both of the two alternative theories of liability.

Accordingly, we overrule Main's second issue.

### IV. Abatement of Rent

 In one cross-point, TAS argues the trial court erred when it refused to submit the following jury question: "Should the rent payable to 4901 Main, Inc. by TAS Automotive Inc., dba European Autoworks of Houston be abated until 4901 Main, Inc. has repaired the roof and structures?" The trial court refused the request and did not submit a jury question concerning abatement of rent.[8] TAS relies on section 91.004 of the Texas Property Code for the proposition that Main's failure to comply with the lease agreement allows TAS to have a lien on the rent due to Main under the lease. *See* Tex. Prop. Code Ann. § 91.004 (Vernon 1995).

Here, neither TAS's original petition, nor its trial amendment contain a reference to or discussion about a claim for abatement of rent by TAS based on Main's breach of contract. We have also carefully examined the reporter's record and find no evidence introduced during trial on the issue of abatement of rent. In TAS's brief to this court, the cross-point references page 52 of the clerk's record. That page contains only the proposed charge submitted by TAS during trial as set forth above, and the trial court's refusal notation. The only other citation to the record in this cross-point is to pages 56 through 65 of the clerk's record, which contain the entire charge of the court and the jury's answers to the questions thereon. TAS does not have pleadings or evidence to support the submission of a jury question regarding abatement of rent. Therefore, we hold the trial court did not abuse its discretion in refusing to submit TAS's proposed jury question. *See* Tex.R. Civ. P. 278; *Elbaor*, 845 S.W.2d at 243 (holding trial court may refuse submission of an issue when no evidence exists warranting its submission). We overrule TAS's cross-point.

### Conclusion

Having considered and overruled Main's two issues, as well as TAS's cross-point, we affirm the judgment of the trial court.

---

8. Section E(28) of the lease agreement prohibits abatement of rent for any reason.