Reversed and Rendered in Part, Reversed and Remanded in Part, and
Memorandum Opinion filed November 6, 2007








 

Reversed
and Rendered in Part, Reversed and Remanded in Part, and Memorandum Opinion
filed November 6, 2007.

                                              

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00068-CV

____________

 

RUEBEN AND NICOLE CASAREZ, Appellants

 

V.

 

ALLTEC CONSTRUCTION CO., INC., Appellee

 



 

On Appeal from the 55th
Judicial District

Harris County, Texas

Trial Court Cause No. 04-13358

 



 

M E M O R A N D U M  O P I N I O N








Appellants, Ruben and Nicole Casarez, sued Alltec
Construction, Co. (Alltec) and Robert Stoll for breach of contract, fraud, and
violations of the Texas Deceptive Trade Practices Act.  Alltec and Stoll filed
a counterclaim alleging breach of contract and unjust enrichment.  A jury found
both parties had breached the construction contract, neither Alltec nor Stoll
committed fraud or violations of the Texas DTPA, and  neither party was
damaged.  The trial court subsequently signed a take nothing judgment.  On
appeal, appellants claim the trial court erred in submitting the question
regarding whether appellants breached the contract because the evidence
conclusively established Alltec breached the contract first, thereby excusing
appellants= performance.  Appellants also argue the evidence is
legally and factually insufficient to support the breach of contract and no
damage jury verdicts against them.  We reverse and render in part and reverse
and remand in part.

Factual and Procedural Background

In June 2001, Tropical Storm Allison hit the Houston area
and flooded appellants= house with approximately two feet of
water.  Since their house was located below the flood plain and because they
had experienced similar trouble in the past, appellants decided something had
to be done.  While contemplating their options, appellants were introduced
through a mutual acquaintance to Robert Stoll, the owner of Alltec.  Stoll
proposed a plan to appellants which would enable them to keep their old house,
which was appellants= main goal.  Stoll=s proposal was to
lift the frame of the house off the slab and get the frame of the house out of
the flood plain.  Appellants agreed to hire Alltec and Stoll for the job.

Around November 2001, Stoll began performing a feasibility
study to determine whether it was possible to lift such a large house.  Stoll
testified this method of lifting appellants= house was new, so
he built a prototype before beginning work on the house. According to Stoll,
the prototype was successful, so Alltec went forward with the work on
appellants= house.  Although appellants were aware of the
feasibility study and prototype, they both testified Stoll represented to them
he had performed this process before.  After the feasibility study was
completed, Alltec began preliminary work on appellants= house, and in
October 2002, appellants signed a contract with Alltec.  The parties agreed the
price for Alltec=s work would be $400,000, time was of the
essence, and the work would be substantially completed by July 1, 2003.  Alltec
did not actually begin working on the project until December 2002 because
appellants were waiting for funding approval.








By April 2003, Alltec was approximately one month behind
schedule.  Around May or June 2003, Stoll approached appellants and informed
them he was out of money and unable to continue work unless appellants paid
approximately $28,000 out of sequence.  Stoll asked appellants to directly pay
$8,000 to the plumber, $6,000 to the electrician, and $14,000 to Juan Duran. 
Each of these people were subcontractors for Alltec, and under the contract, it
was Alltec=s responsibility to pay them.  In addition, appellants
had already paid Alltec a portion of the money owed to the plumber, but Alltec
put the money into its account and used it for something else.  Therefore,
Alltec was unable to pay the plumber and was essentially asking for double
payment by the appellants.  Appellants refused to pay the additional money to
Alltec.

At this point, Alltec could not go forward with the
project.  As a solution, Stoll proposed to appellants the option of having
Duran, one of Stoll=s subcontractors, finish the work independently. 
Stoll proposed the option of appellants paying Duran directly and Stoll staying
on the project solely as a consultant.  Appellants were not willing to entrust
the completion of the work to Duran, so they decided not to go forward with the
proposal.








At some point after Alltec informed appellants it could not
go forward, appellants sent Alltec and Stoll a termination letter.  According
to the construction contract entered into by appellants and Alltec, section
19.2 allows the owner to terminate the contract with the contractor for a
number of reasons.  However, under section 19.2.2 ,the owner was required to
obtain certification by the architect that sufficient cause existed to justify
the termination.  During trial, Rueben Casarez testified that after Stoll
refused to go forward with the contract, he did in fact send a termination
letter.  But, he also testified the architect certified sufficient cause
existed to justify the termination before he sent the letter.  However, Stoll testified
he received a termination letter from appellants but also testified the
architect never certified sufficient cause existed to justify the termination. 
In addition, Kamran Mouzoon, the architect on the project, never testified that
he certified sufficient cause existed to terminate the contract.  In fact,
Mouzoon testified there was no cause for stopping the project and no reason he
could think of to put the project on hold.  He also testified he was
unaware of Stoll=s refusal to go forward unless appellants
paid him more money and his failure to pay the plumber.

In July 2003, Stoll sent appellants another draw request
for work that had been done on their home and work yet to be done on their
home.  Rueben testified he did not pay the request because the contract was
terminated at that point and because the architect had not certified the
payment, which was a requirement under the contract. 

Because appellants= house was
uncompleted and Alltec could not finish it, appellants contacted four
contractors to look at the house and bid on the cost of completion.  Rueben
testified two of the contractors refused to go forward with the work based on
their assessment, and two of the contractors placed a bid.  Rueben also
testified the two contractors who placed bids were unwilling to do the work for
the $180,000, which was appellants= remaining balance
on their contract with Alltec, and were unwilling to warrant the work.  After
taking bids from contractors and hiring inspectors to look at the house,
appellants decided it made more economic sense to tear the house down and start
over.  Appellants eventually demolished their old house and hired a new
contractor to build a new house.








In May 2004, appellants sued Alltec and Stoll for breach of
contract, fraud, and violations of the Texas Deceptive Trade Practices Act. 
Alltec and Stoll filed a counterclaim alleging breach of contract and unjust
enrichment.  After a three day trial, the jury found both parties breached the
construction contract, neither Alltec nor Stoll committed fraud or violations
of the Texas DTPA, and neither party suffered damages.  Appellants filed a
Motion for Judgment Notwithstanding the Verdict or, alternatively, a Motion for
New Trial.  The trial court denied both.  The trial court subsequently signed a
take nothing judgment.  Appellants appealed, and after filing their notice of
appeal, Stoll filed for bankrupt ,causing an automatic stay of the appeal. 
Stoll was later discharged, the appeal against him was dismissed, and the
appeal against Alltec was severed and reinstated.       

Discussion

A.      Charge
Error        

In their first issue, appellants contend the trial court
erred in submitting the question regarding whether appellants breached the
contract because the evidence conclusively established Alltec breached the
contract first, thereby excusing appellants= performance. 
Also within their first issue, appellants contend the evidence is legally and
factually insufficient  to support the jury=s finding that
appellants breached the contract.[1] 
We will address the jury charge issue first.  Because the jury charge issue is
dispositive of the appeal, we will not address appellants= other issues. 
Tex. R. App. P. 47.1.

1.       Standard
of Review 

We review the trial court=s submission of
instructions and jury questions under an abuse of discretion standard.  Toles
v. Toles, 45 S.W.3d 252, 263 (Tex. App.CDallas  2001,
pet. denied).  The trial court has broad discretion in submitting jury
questions so long as the questions submitted fairly place the disputed issues
before the jury.  Id. (citing Varme v. Gordon, 881 S.W.2d 877,
881 (Tex. App.CHouston [14th Dist.] 1994, writ denied)).  A trial
court abuses its discretion by acting arbitrarily, unreasonably, or without
consideration of guiding principles.  Walker v. Gutierrez, 111 S.W.3d
56, 62 (Tex. 2003).     








If a trial court abuses its discretion when it submits a
question or instruction, we do not reverse in the absence of harm.  See Tex.
R. App. P. 44.1(a); 4901 Main, Inc. v. TAS Automotive, Inc., 187 S.W.3d
627, 631 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  Harm
occurs when the error in the charge probably caused the rendition of an
improper judgment, or prevented appellant from properly presenting the case to
the court of appeals.  Tex. R. App. P. 44.1(a); 4901 Main, 187 S.W.3d at
631.  To determine harm, the appellate court must consider the entire record,
including the parties= pleadings, the evidence, and the charge. 
4901 Main, 187 S.W.3d at 631.  Submission of an improper jury question
can be harmless error if the jury=s answers to other
questions render the improper question immaterial.  City of Brownsville v.
Alvarado, 897 S.W.2d 750, 752 (Tex. 1995); Rebel Drilling Co. v. Nabors
Drilling USA, Inc., No. 14-02-00841-CV, 2004 WL 2058260, at *8 (Tex. App.CHouston [14th
Dist.] Sept. 16, 2004, no pet.) (mem. op.).  A jury question is considered
immaterial when its answer can be found elsewhere in the verdict or when its
answer cannot alter the effect of the verdict.  Alvarado, 897 S.W.2d at
752; Rebel Drilling, 2004 WL 2058260, at *8.  Submission of an
immaterial issue is not harmful error unless the submission confused or misled
the jury.  Alvarado, 897 S.W.2d at 752; Rebel Drilling, 2004 WL
2058260, at *8.  When determining whether a particular question could have
confused or misled the jury, we Aconsider the
probable effect on the minds of the jury in the light of the charge as a whole.@  Alvarado,
897 S.W.2d at 752; Rebel Drilling, 2004 WL 2058260, at *8.

2.       Analysis








We must first determine whether the trial court abused its
discretion when it submitted the question regarding whether appellants breached
the contract.  It is a fundamental principle of contract law that when one
party to a contract commits a material breach of that contract, the other party
is discharged or excused from further performance.  Mustang Pipeline Co.
v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004) (citing Hernandez
v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994)).  Thus, when a
party to a contract fails to perform its obligations under that contract, it
may not thereafter enforce the remaining terms of the contract against the
other party.  Nova Info. Sys. v. Nidhi & Roneil, Inc., No.
14-05-00845-CV, 2007 WL 925813, at *4 (Tex. App.CHouston [14th
Dist.] March 29, 2007, no pet.) (mem. op.).  Because we are dealing with dual
findings that both parties breached the agreement, we must determine whether it
was conclusively established that Alltec materially breached the contract
first.  Hooker v.
Nguyen, No.
14-04-00238-CV, 2005 WL 2675018, at *8 (Tex. App.CHouston [14th Dist.] Oct. 20, 2005,
pet. denied) (mem. op.). 

During trial, both sides testified that after Alltec ran
into serious financial difficulties, Stoll informed appellants he was unable to
continue the project unless appellants paid additional money to its
subcontractors.  Rueben testified A[Stoll] told me
that he had run out of money, [he] couldn=t go forward
unless I gave him some more money.@  Rueben again
testified on cross-examination  A[Stoll] told me he
wouldn=t B could not go
further B he wouldn=t work any more
unless we paid him the additional amount.@  When Stoll was
examined by appellants= attorney, Stoll admitted he told
appellants Alltec could not continue unless additional payments were made to
the subcontractors.  Stoll also admitted his company could not comply with the
contract, and it was necessary for appellants, Stoll, and Duran to make some
other arrangements for the job to be completed.  In addition, Stoll=s lawyer admitted
in his closing argument that Stoll breached the contract.  Stoll=s lawyer stated
the following:  

[W]e didn=t come in here to say that Bob didn=t breach the contract.  We=re not saying that.  We told you
that he ran into financial difficulties that had nothing to do with the
Casarezes and nothing to do with him.  It was beyond his control.  And the
minute he saw that happening, he didn=t try to hide it.  He didn=t try to do things to alter budgets.  He went
straight to Mr. Casarez and said look, I=ve got a problem here.  I don=t have any money.  The money that you put inside my
account that should have gone to one of my subcontractors isn=t there.             

Also,
the jury found Alltec failed to comply with the construction contract, and this
finding is not challenged on appeal.  








The record not only establishes Alltec breached the
contract but it also establishes Alltec=s breach occurred
before appellants= alleged breach.  During trial, Rueben
testified he sent the termination letter after Stoll informed him he could not
go forward with the contract.  In addition, Stoll admitted in cross-examination
at the time he received the termination letter from appellants he had already
informed appellants of his inability to finish the job.        Next, we must
determine whether Alltec=s breach was material.  Pursuant to Mustang
Pipeline, we consider the circumstances listed in the Restatement and cited
by the supreme court that are significant in determining whether a failure to
perform is material.  See Mustang Pipeline, 134 S.W.3d at 199; Hooker, 2005 WL 2675018, at *8.  The Restatement
lists the following factors:

(a)     the extent to which the injured party will
be deprived of the benefit which he reasonably expected;

(b)     the extent to which the injured party can be
adequately compensated for the part of that benefit of which he will be
deprived;

(c)     the extent to which the party failing to
perform or to offer to perform will suffer forfeiture;

(d)     the likelihood that the party failing to
perform or to offer to perform will cure his failure, taking account of the
circumstances including any reasonable assurances;

(e)     the extent to which the behavior of the
party failing to perform or to offer to perform comports with standards of good
faith and fair dealing.

Mustang Pipeline, 134 S.W.3d at 199; Hooker,
2005 WL 2675018, at *8; Restatement

(Second)
of Contracts ' 241 (1981).  The Restatement also sets forth factors
significant in determining whether a party=s duties are
discharged under a contract due to the other party=s material breach:

(1)     the extent to which it reasonably appears to
the injured party that delay may prevent or hinder him in making reasonable
substitute arrangements;








(2)     the extent to which the agreement provides
for performance without delay, but a material failure to perform or to offer to
perform on a stated day does not of itself discharge the other party=s remaining duties unless the
circumstances including the language of the agreement, indicate that
performance or an offer to perform by that day is important.     

Mustang
Pipeline, 134 S.W.3d at 199; Hooker, 2005 WL 2675018, at *8B9; Restatement
(Second) of Contracts ' 242 (1981). 

The record establishes Alltec=s breach was
material.  Appellants reasonably expected Alltec to produce a livable house by
July 1, 2003.  Appellants were deprived of that benefit when Alltec refused to
complete the project under the original financial terms.  According to the
contract, Alltec was to achieve Asubstantial
completion@ of the work not later than July 1, 2003.  The parties
defined substantial completion as Athe stage in the
progress of the Work when the Work or designated portion thereof is
sufficiently complete in accordance with the Contract Documents so that the
Owner can occupy or utilize the Work for its intended use.@ By May 2003, the
project was already over one month behind schedule.  Sometime at the end of May
or beginning of June 2003, Alltec informed appellants his business was in
financial trouble and he could not complete the project without an additional
payment of $28,000.  Appellants refused to pay the additional money, and Alltec
stopped work.  At the point Alltec stopped work, the house was unusable and
unlivable.  Alltec never achieved substantial completion.  In fact, because appellants
were unable to find another general contractor who was willing to do the work
for the amount left in appellants= contract and to
warrant the work, the completion date of July 1, 2003 was not met.  Despite
Stoll=s offer to stay on
the project as a consultant, Alltec neglected to cure its failure to perform. 
Furthermore, Alltec=s behavior did not comport with standards
of good faith and fair dealing by demanding more money than the contract
required and refusing to go forward with the project unless appellants made
extracontractual payments.  








The record conclusively establishes Alltec never achieved
substantial completion.  Other courts in Texas have held that if there is a
material breach of a contract, that contract has not been substantially
performed.  Hooker, 2005 WL 2675018, at *10 (citing Cont=l Dredging v.
De-Kaizered, 120 S.W.3d 380, 394 (Tex. App.CTexarkana 2003,
pet. denied); Patel v. Ambassador Drycleaning & Laundry Co., 86
S.W.3d 304, 309 (Tex. App.CEastland 2002, no pet.)).  Therefore, the
converse should apply; that is, if a party fails to substantially perform, its
breach of the contract is material.  Hooker, 2005 WL 2675018, at *10; see
49 David R. Dow & Craig Smyser, Texas Practice: Contract Law ' 9.3 (2005).

Based on the facts before us, we find there is no room for
ordinary minds to differ as to the conclusion to be drawn.  See Triton Oil
& Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443,
446 (Tex. 1982).  Accordingly, we hold Alltec committed a material breach as a
matter of law; as a result, appellants were thereafter discharged from their
duties under the contract.  See Mustang Pipeline, 134 S.W.3d at 200; Hooker,
2005 WL 2675018, at *10.  If an issue is conclusively established as a matter
of law, the question should not be submitted to the jury.  See T.O. Stanley
Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 223 (Tex. 1992).  Accordingly,
it was an abuse of discretion for the trial court to submit the question to the
jury.  

Next, we must determine whether the error in the jury
charge was harmful.  Appellants argue this error provided the basis for the
improper take nothing judgment entered against them.  We agree. 








In this case, the jury=s finding in
Question 5(a) that Alltec breached the contract, rendered the submission of
Question 5(b), which focused on whether appellants breached the contract,
immaterial.  See Alvarado, 897 S.W.2d at 752B53 (finding the
jury=s assignment of
zero negligence to the City rendered the following questions regarding
appellant=s negligence immaterial).  As discussed above, once it
was determined Alltec breached the contract, appellants breach was irrelevant
because they were excused.  See id.  However, we find the error harmful
because submission of the question regarding appellants= breach of the
contract confused or misled the jury.  In considering the probable effect on
the minds of the jury, we have determined that submission of the question
misled the jury into thinking appellants= breach of the
contract vitiated their entitlement to damages.  Therefore, we find the error
probably caused the rendition of an improper take nothing judgment against
appellants.  Accordingly, we reverse the take nothing judgment against
appellants and remand for a new trial.  See Mustang Pipeline, 134 S.W.3d
at 200 (implying harmful error by reversing the trial court=s judgment); Hooker,
2005 WL 2675018, at *10 (implying harmful error by reversing the trial court=s judgment). 

Because we find the submission of Question 5(b) was harmful
error, requiring remand for a new trial, we need not address appellants= remaining issues.

Conclusion

We reverse and render judgment that appellants did not
breach the contract as a matter of law.  We also reverse that portion of the
judgment awarding appellants zero damages and no attorney=s fees.  We affirm the judgment of the trial court in
all other respects.  We remand the cause for consideration of the issues of
appellants= damages and attorney=s fees.  See Tex. R. App. P. 44.1(b). 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed November 6, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.  









[1]  Appellants also mention in their brief the trial
court should not have overruled Appellants=
motion for directed verdict on Alltec=s
breach of contract claim and should have disregarded the jury=s answer when asked to do so in Appellants= post-verdict motions.  Since these claims can
properly be reviewed under a similar analysis, we will not address them
specifically.