# NO. 12-11-00257-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SAUNG PARK, M.D.,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *MEMORIAL HEALTH SYSTEM OF EAST*<br>*TEXAS, MEMORIAL MEDICAL CENTER*<br>*OF EAST TEXAS, ABRAHAM CHERIYAN, M.D.,*<br>*KAVITAH PINNAMANENI, M.D.,*<br>*DANIEL FUENTES, D.O., SIDNEY ROBERTS, M.D.,*<br>*GEORGE FIDONE, M.D., MICHAEL HUNT HUBER, M.D.,*<br>*IMRAN NAZEER, M.D., RAVINDER BACHIREDDY, M.D.,*<br>*MUNIR AHMAN, M.D., DAVID TODD, M.D.,*<br>*JOHN MCCLAIN, M.D., KYLE GREGORY KROHN, M.D.,*<br>*JERRY JOHNSON, M.D., KRISHNA VEGIRAJU, M.D.,*<br>*DARWIN CLARK, M.D., SUNHIL GEORGE, M.D.,*<br>*GHAZALA B. KHAN, M.D., MELVIN COLE, M.D.,*<br>*GEORGE HENDERSON, III, H.J. SHANDS, III,*<br>*JACK SWEENY, RAY BALDWIN III,*<br>*GEORGE DOUGLAS MORSE, PATRICIA MCKENZIE,*<br>*PAUL PEREZ, GIBSON FRIESEN, RONA FRIESEN,*<br>*RANDY GEORGE, RAY POLK, H.E. STRIEDEL,*<br>*AND S.W. HENDERSON, III,*<br>*APPELLEES* | § | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

This appeal involves an emergency room doctor's suit against the hospital where he provided services, as well as numerous other entities and physicians, in which he alleged breach of contract, various tort causes of action, and violations of the Texas Medical Practice Act and the Texas Hospital Licensing Law. Saung Park, M.D. appeals from a summary judgment in favor of Memorial Health System of East Texas, Memorial Medical Center of East Texas, Abraham Cheriyan, M.D., Kavitah Pinnamaneni, M.D., Daniel Fuentes, D.O., Sidney Roberts, M.D., George

Fidone, M.D., Michael Hunt Huber, M.D., Imran Nazeer, M.D., Ravinder Bachireddy, M.D., Munir Ahman, M.D., David Todd, M.D., John McClain, M.D., Kyle Gregory Krohn, M.D., Jerry Johnson, M.D., Krishna Vegiraju, M.D., Darwin Clark, M.D., Sunhil George, M.D., Ghazala B. Khan, M.D., Melvin Cole, M.D., George Henderson, III, H.J. Shands, III, Jack Sweeny, Ray Baldwin III, George Douglas Morse, Patricia McKenzie, Paul Perez, Gibson Friesen, Rona Friesen, Randy George, Ray Polk, H.E. Striedel, and S.W. Henderson, III (collectively Memorial). We affirm the trial court's judgment.

## Background

Memorial Medical Center of East Texas (MMC) is a part of Memorial Health Care Systems of East Texas (MHS). EmCare, Inc. manages Texas Emergency Room Services, P.A. (TERS) and Texas EM-I Medical Services, P.A. EM-I contracted with MHS to provide physicians to staff MMC's emergency room. Park was under contract with TERS pursuant to which he provided emergency care to patients at MMC. In accordance with MMC's Medical Staff Bylaws, Park received provisional medical staff privileges from MMC. On February 7, 2008, Dr. Kerry Evans, Medical Director for Texas EM-1 Medical Services and Director of Emergency Services for Memorial Health Care Systems of East Texas, notified Park by email that he must temporarily "pull [Park] off the schedule" due to questions concerning Park's care of three patients. Evans called Park on February 14 and told him to return to work at MMC the next day, but with the requirement that he obtain a consultation from an on-call pediatrician or another emergency room physician for all pediatric patients, prior to case management and discharge. Later that day, Park spoke to Dr. Hortencia Luna-Solorzano, Interim Regional Emergency Room Director for EmCare, who agreed to obtain permission for Park to work at MMC without restrictions. The following day, Park drove to MMC, which is in Lufkin, but was informed by Luna-Solorzano that she had not spoken with the necessary individual, Dr. George Fidone. Therefore, Park would have to work in the emergency room with the restrictions. Park did not work, but simply returned to his home in Killeen.

On February 18, Evans sent Park an email explaining that his refusal to work with restrictions constituted a breach of his contract with TERS. As a result, EmCare terminated Park's contract. This, in turn, resulted in a loss of his privileges at MMC. Litigation ensued against Memorial and EmCare, Inc., Texas EM-I Medical Services, P.A., TERS, Kerry Evans, M.D., Hortencia G. Luna-Solorzano, M.D., and others. Park alleged breach of contract, defamation and business disparagement, interference with business relationships, intentional infliction of emotional

distress, and violations of the Texas Medical Practice Act and the Texas Hospital Licensing Law. Memorial filed a motion for summary judgment, which was granted. The trial court severed the causes of action against Memorial from the causes of action against the remaining defendants,[1] making the summary judgment in favor of Memorial a final judgment.

**SUMMARY JUDGMENT**

In his sole issue, Park contends the trial court erred in granting Memorial's motion for summary judgment. He asserts that his causes of action exist and are viable under Texas law. He also contends that Memorial did not set forth any specific element of his cause of action that it was purporting to negate. He argues that he raised a fact issue on causation and on whether he had been summarily suspended.

**Standard of Review**

We review the trial court's decision to grant summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).

A no evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict, which may be supported by evidence. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A party may move for no evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof. *Martinez v. Hays Constr., Inc.*, 355 S.W.3d 170, 177 (Tex. App.– Houston [1st Dist.] 2011, no pet.). A trial court must grant a no evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King*

---

[1] The remaining defendants are not parties to this appeal.

*Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak as to merely create a surmise or suspicion of a fact. *Id*.

Review of a summary judgment under either a traditional standard or no evidence standard requires that the evidence presented by both the motion and the response be viewed in the light most favorable to the party against whom the motion was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310; *Wal-Mart Stores, Inc.*, 92 S.W.3d at 506. In reviewing a summary judgment, we consider all grounds ruled on by the trial court and preserved for appellate review that are necessary for final disposition of the appeal. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

## Discussion

Memorial filed a combined traditional and no evidence motion for summary judgment. It claimed entitlement to judgment on the breach of contract claim on the basis that there is no privity of contract between MMC and Park, on Park's tort claims on the basis that there is no evidence of causation, and on the claims of statutory violations on the basis that those statutes do not create a right of action in favor of physicians against hospitals. The motion is supported by twenty-two exhibits. In his response, Park asserted that he raised fact questions on causation and summary suspension, and he argued that all of his causes of action are viable under Texas law. His response is supported by his affidavit and excerpts from the depositions of five witnesses.

### *Breach of Contract*

Park asserted a claim for breach of contract. In his petition, Park asserted that he had contracted with TERS and TERS had contracted with MMC. These facts were reiterated in Park's affidavit submitted with his response to the motion for summary judgment. Included in Memorial's summary judgment evidence is a document entitled Independent Contractor Physician Agreement signed by Park and the president of TERS. It provides that TERS has contracted with MMC to provide physicians for emergency room coverage and Park agrees to contract with TERS as an independent contractor to provide a portion of those professional medical services. Park also agrees to act in accordance with MMC's bylaws and that, upon termination of his contract with TERS, he will relinquish all staff privileges at MMC. Under the contract, TERS may terminate the contract immediately upon written notice to Park if he fails "to perform diligently his duties under [the contract] or to comply with the rules, regulations, or other policies" of MMC. Memorial also

4

produced a portion of Park's deposition testimony in which he stated that he did not sign a written contract with MMC to perform medical services in its emergency room and the only third party entity with whom he had a contract to perform medical services in the emergency department at MMC was TERS.

Thus, Park contracted with TERS, yet the parties disagree about which "contract" was allegedly breached. On appeal, Park contends he based his breach of contract cause of action on a breach of the hospital's bylaws. Park uses the term "MMC Bylaws" throughout his petition, but he specifically states in the petition that "[t]he governing bylaws are the Medical Staff Bylaws." In his reply brief, Park asserts that the Medical Staff Bylaws "are in fact MMC's hospital bylaws," his allegation to that effect has never been rebutted, and this court must take it as true. We disagree. In petitions, a specific allegation controls over a general allegation. *Monsanto Co. v. Milam*, 494 S.W.2d 534, 536 (Tex. 1973). In this case, we fail to see even a general allegation. Mere use of the term "MMC Bylaws" does not constitute an allegation that the Medical Staff Bylaws and the hospital's bylaws are one and the same document. Park specifically alleged that the governing bylaws are the Medical Staff Bylaws and constitute the applicable contract for his contention that MMC violated his contractual right to due process.

Park's breach of contract allegation is based on an alleged breach of the Medical Staff Bylaws. While procedural rights established in hospital bylaws can constitute contractual rights, rights created by medical staff bylaws are not necessarily binding on a hospital. *Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 887 (Tex. App.–Dallas 2000, pet. denied). Medical staff bylaws that do not define or limit the power of a hospital as it acts through its governing board do not create contractual obligations for the hospital. *Id*. at 888. Here, the Medical Staff Bylaws provide that if the Medical Executive Committee makes a recommendation for corrective action, that recommendation must be approved by the hospital board before it can become final. Specifically, the bylaws provide that, if the Medical Executive Committee recommends a summary suspension, its terms shall remain in effect pending a final decision by the board. Thus, the hospital board's power is not defined or limited by the Medical Staff Bylaws, and therefore those bylaws do not create contractual obligations for the hospital. *See id*.

The existence of a valid contract is one of the essential elements of a breach of contract claim. *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.). Privity of contract is a necessary predicate to suit on a contract. *See Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 607 (Tex. 2004). Because the

summary judgment evidence shows that there is no valid contract between Park and MMC, Memorial is entitled to summary judgment as a matter of law on Park's cause of action for breach of contract. TEX. R. CIV. P. 166a(c); *Interstate Contracting Corp.*, 135 S.W.3d at 607.

### *Tort Claims*

In its motion for summary judgment, Memorial asserted that it is entitled to judgment as a matter of law on the tort claims because there is no evidence of causation. Memorial presented numerous documents in support of its motion. The contract between TERS and Park states that TERS can terminate the contract if Park does not diligently perform his duties and that he loses staff privileges once the contract is terminated. Included are excerpts of deposition testimony of Dr. George Fidone, who was the head of the ad hoc committee that was formed to look at the care provided by Park. He testified that he did not request that Park be taken off any of his shifts and did not know of anyone making that request. Fidone explained that the peer review process was not complete. Therefore, no verdict was reached and there was no bad outcome to report. He stated that none of the grounds for summary suspension were present and there was no summary suspension. Fidone testified that he never told Park he could no longer work at the emergency room at MMC and explained that Park was told he could work with a pediatric consult requirement.

Dr. Kerry Evans testified by deposition that Park was relieved from his shifts. He explained that relieving a doctor from working until an issue is looked at more closely is not a summary suspension. Further, the Medical Executive Committee or hospital administration would have to determine if a doctor is to be summarily suspended. Dr. Hortencia Luna-Solorzano's deposition was consistent. She also stated that Park was told he could and should come back to work with a pediatric consult requirement and he was not told by EmCare or its contractual affiliates that he was summarily suspended from privileges at MMC. Also included in the summary judgment evidence are emails sent between Park and Evans. On February 7, 2008, Evans sent an email to Park explaining that he needed to pull Park from his shifts for the upcoming weekend due to problems concerning Park's care of patients. The email said that "administration has left [him] no choice but to temporarily pull [Park] off the schedule." Park responded on February 9, stating that he was perplexed by the "precautionary suspension," and concerned about his reputation. He asked for a written peer review. Evans's February 18 email to Park states in pertinent part as follows:

> Dr. Luna and I discussed your matter at length and our conclusion was that based on the fact [that] you are able to work with restrictions, and you chose not to complete your assigned shifts, you are infact, [sic] in breech [sic] of your contract with EmCare.

. . . .

[A]s we discussed the 15th of February on the phone, if you chose not to work under the restrictions as outline[d] and abandoned your shifts that you had scheduled, you would be in breech [sic] of your contract, which is grounds for termination from your contract. You told me that you understood this and at that time chose to drive back home and not work under the restrictions.

. . . .

For these reasons noted above, which you and I have discussed at length on more than one occasion, it was our decision to terminate your contract as you are reading this.

. . . .

I would also like to state that your termination has nothing to do with the peer review process or concerns, but only with the fact that your [sic] refused to work your shifts that you had scheduled.

Memorial also included excerpts from Park's deposition testimony in which he explained that he spoke to Evans by phone at 6:45 p.m. on February 14. Park testified that Evans told him to return to his shift the next day under the restriction that he must consult a pediatrician when treating pediatric patients. Park verified that Evans did not tell Park that he should not show up for work the next day. Park testified that Evans told Park that if he did not show up and work his assigned shift with the pediatric consult, he ran the risk of being in breach of contract. Park also testified that Luna-Solorzano did not tell him not to show up for his assigned emergency room shift and she did not tell him he was summarily suspended. She told him to go to work the next day. He testified that no one from the hospital told him not to show up to work his assigned emergency room schedule starting Friday, February 15.

Park sued for defamation, business disparagement, interference with current and prospective contractual or business relationships, and intentional infliction of emotional distress. One element of each of these causes of action is causation. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (plaintiff must prove that defendant's actions caused his emotional distress); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (plaintiff must show defendant's tortious interference with contract proximately caused his damage); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (to prevail on a business disparagement claim, plaintiff must prove defendant's actions resulted in special damages to the plaintiff); *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 509 (Tex. App.–Tyler 2008, pet. denied) (plaintiff must prove he suffered damages as a result of defendant's defamatory statement); *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 109 (Tex. App.–El Paso 1997, pet. denied) (plaintiff must prove that defendant's

7

interference with a prospective business relationship was the proximate cause of plaintiff's damages).

Memorial's summary judgment evidence shows that Park was not summarily suspended, the ad hoc committee placed restrictions on his privileges while they investigated potential problems with patient care, and he was instructed to work on February 15 with those restrictions in place. Further, the evidence shows that he chose not to work his shifts the weekend of February 15. His failure to work assigned shifts constituted a breach of his contract with EmCare and led to his termination. Therefore, it was Park's own actions that led to his damages, not the actions of Memorial. Thus, because Memorial showed that it did not cause Park's damages, Memorial showed entitlement to judgment on Park's tort claims as a matter of law and the burden shifted to Park to show otherwise. *See* TEX. R. CIV. P. 166a(i).

Park filed a response to Memorial's motion for summary judgment accompanied by a considerable amount of evidence, some of which duplicates Memorial's evidence. Park argued that his evidence raises a fact question on the element of causation and Memorial's actions caused his damages. Specifically, he argued that he was "summarily suspended," Memorial imposed restrictions on his privileges, and he was wrongfully terminated. He contended that his acceptance of the restrictions was a condition of lifting the unlawful summary suspension. Further, he argued, the restrictions created a situation in which he could not practice emergency medicine safely and he had a lawful duty to refuse the restrictions and refuse to work until he could practice emergency medicine unrestricted. He argued that the EmCare contract termination did not break the causal link and was in fact the first resulting damage that Park suffered from Memorial's conduct. He further argued that Memorial escalated his damages by stating in writing that they would take no further action as long as he did not practice emergency medicine. Park also argued that the incident had adversely affected his marketability and employability.

Park relied on excerpts from Luna-Solorzano's deposition testimony. She explained that she was on the ad hoc investigative committee that decided to place a restriction on Park's privileges. As a condition to returning to work, he had to have pediatric patients reviewed. They did not tell him to withhold treatment. They asked him "to simply run the case by somebody, either another physician within the emergency department or a pediatrician before disposition." She testified that she had explained to Park that this "was not a big deal" and they "do that all the time." She stated that the ad hoc committee definitely did not make a decision to suspend him. She testified that she told Park to go to work, and continue to work as he had been requested, and she and Evans would

8

try to talk to Fidone and get his privileges unrestricted. She testified that Park said he would go to work the next day but then decided not to work that day. She later clarified that they did not view the condition as a restriction on his privileges, just a recommendation to consult on patients. She was not able to speak with Fidone.

Park also submitted excerpts from Evans's deposition. Evans explained that his reference to "administration" in his February 7 email meant hospital administration. Evans testified that Park never worked under restrictions; "he terminated himself before he ever got to that point." He explained that he had a phone conversation with Park on February 15 during which they discussed his restrictions. Evans believed that it was the ad hoc committee, of which Fidone was the head, that made the decision to place restrictions on Park.

Park also relied on excerpts from Fidone's deposition testimony. Fidone denied asking Evans to take Park off any shifts. He said he was not aware of anyone at the hospital ever making that request. He clarified that there was one weekend Park was scheduled to work when Evans may have taken him off the schedule for that weekend. Fidone testified that he did not tell Evans that Park could not work.

In his deposition testimony, Park explained that questions arose about his treatment of a fourteen-year-old patient on February 3, 2008. Evans sent him an email on Thursday, February 7, saying he was temporarily pulled from his shift that started the following day. On February 11 or 12, Fidone called Park to say that he had formed an ad hoc committee. Park testified that Fidone told him there would be inquiries and that Park was summarily suspended in the meantime.

Park also stated that he talked to Evans, who told him he needed to work under a consultation requirement. On February 14, Park spoke to Luna-Solorzano. Park testified that Luna-Solorzano did not tell him not to show up for work or that he was summarily suspended. She instructed him to come to work the next day without the consultation requirement. However, she was to get approval from Fidone. Evans called Park on February 14 and told him he could work the next day but he had to work with a pediatric consult requirement. Park told Evans that he needed to either work unrestricted or remain suspended until the investigation was complete. Evans said he would have Fidone call Park, but Fidone did not call him. Park called Evans back and asked what he should do. Evans told him he needed to work his assigned shift the next day, which was February 15, subject to the pediatric consult requirement. Park testified that Evans did not tell him to not show up for work the next day. Evans explained to Park that if he did not work his assigned shift with the pediatric consult, he ran the risk of being in breach of his contract and having his

contract terminated. Park admitted that he was aware of that potential risk before he left his home in Killeen.

The following day, Friday February 15, he drove from his home in Killeen to Lufkin for his shift. Once in Lufkin, he spoke to the EmCare coordinator, who told him he was not scheduled to work that day. He called Luna-Solorzano from the hospital parking lot, who told him that she had not spoken to Fidone. Therefore, Park had to work with the restriction. Park then called Evans, who said the pediatric consult requirement remained in place. Park testified that Evans told Park that he intended to work that shift and Park needed to go home. However, in the same deposition, Park also testified that no one told him not to "show up" on February 15.

Park also included emails between him and Evans that Memorial had not included. On February 10, Evans told Park in an email that he was working with EmCare and the peer review committee to resolve the issue. He said he would call Park on Monday with an update so as not to disrupt Park's schedule further, if possible. On February 14, Park emailed Evans to explain why it would be unethical for him to return to work on February 15 with restricted privileges.

Most of Park's evidence supports Memorial's position that, while Park was temporarily removed from the schedule on February 8, Park was not summarily suspended, and he chose not to work on February 15. The only evidence that Park was summarily suspended was his testimony that Fidone told him he was summarily suspended. However, neither Fidone nor Evans had the authority to summarily suspend Park. Further, it is undisputed that Park's actions did not meet the criteria described in the bylaws that would warrant summary suspension. In light of the remainder of the evidence that there was no summary suspension on February 8, we conclude that reasonable and fair-minded people would not differ in their conclusion that Park was not summarily suspended. Park's self-serving statement is so weak as to merely create a suspicion of a fact and is less than a scintilla of evidence. *See* **King Ranch, Inc.**, 118 S.W.3d at 751. It is undisputed that he was told to return to work on February 15. There is no evidence that removal from the schedule for that one weekend caused Park's damages. Further, Fidone explained that the peer review process had not been completed so there was no bad outcome reported.

Regarding the weekend of February 15, Park's deposition testimony was conflicting. He testified that no one told him not to work on February 15. He specifically said Luna-Solorzano and Evans both told him to work on February 15. But he also said that, once there, Evans told him he was working that shift and Park needed to go home. We also note that, in his petition, Park asserted that EmCare breached its contract with him, which caused him "to resign voluntarily while under

10

investigation." Further, in his brief, Park asserts that "[b]y placing [him] in the position where he could not ethically work his assigned shifts in the emergency room, [Memorial, Evans, and Luna] placed Dr. Park in the position where he had no etical [sic] choice but to 'breach' his EmCare contract and refuse to work." It appears that Park concedes the fact that it was his choice not to work on February 15. To the extent that Park may be arguing that his single statement that Evans told him to go home on February 15 raised a fact issue, we conclude that the statement is no more than a scintilla of evidence that Memorial caused his damages and amounts to no evidence of causation. *See Rodriguez*, 92 S.W.3d at 506. Because there is no evidence that Memorial's actions caused Park's damages, Memorial is entitled to summary judgment as a matter of law on Park's tort causes of action. *See* TEX. R. CIV. P. 166a(i).

### *Statutory Causes of Action*

Park attempted to recover damages based on alleged violations of the Texas Medical Practice Act and the Texas Hospital Licensing Law. *See* TEX. OCC. CODE ANN. §§ 151.001–168.202 (West 2012 & Supp. 2012); TEX. HEALTH & SAFETY CODE ANN. §§ 241.001–.156 (West 2010 & Supp. 2012). Memorial asserted entitlement to judgment as a matter of law on these causes of action, claiming that Park is precluded from bringing private causes of action against hospitals and medical practitioners based on these statutes.

The Texas Hospital Licensing Law requires hospitals to afford procedural due process to each person applying for medical staff membership and privileges. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.101. A hospital's failure to provide procedural due process to physicians applying for privileges may be redressed solely through actions by the attorney general, the Texas Department of Health, or the commissioner of health. *See id*. §§ 241.051–.059. In addition, the legislature set forth guidelines in the Texas Medical Practice Act for hospitals that choose to adopt rules and regulations relating to qualifications for medical staff appointments. *See* TEX. OCC. CODE ANN. § 151.051. These statutes, although binding on hospitals, do not create a right of action in favor of physicians against hospitals that fail to comply. *Stephan*, 20 S.W.3d at 886. Enforcement is statutorily placed in the hands of the state and its agencies. *Id*. Accordingly, existing Texas law does not provide relief for Park's alleged damages pursuant to these statutes. Thus, Memorial is entitled to summary judgment as a matter of law on Park's statutory causes of action. *See* TEX. R. CIV. P. 166a(i).

11

Memorial is entitled to summary judgment because there was no valid contract between Park and MMC, there is no evidence that Memorial's actions caused Park's alleged damages, and the Texas Hospital Licensing Law and the Texas Medical Practice Act are not enforceable by a private lawsuit. Accordingly, we overrule Park's sole issue.

We *affirm* the trial court's judgment.


**BRIAN HOYLE**
Justice


Opinion delivered March 4, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)


12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 4, 2013**

**NO. 12-11-00257-CV**

**SAUNG PARK, M.D.,**

Appellant

V.

**MEMORIAL HEALTH SYSTEM OF EAST TEXAS,**

**MEMORIAL MEDICAL CENTER OF EAST TEXAS,
ABRAHAM CHERIYAN, M.D., KAVITAH PINNAMANENI, M.D.,
DANIEL FUENTES, D.O., SIDNEY ROBERTS, M.D.,
GEORGE FIDONE, M.D., MICHAEL HUNT HUBER, M.D.,
IMRAN NAZEER, M.D., RAVINDER BACHIREDDY, M.D.,
MUNIR AHMAN, M.D., DAVID TODD, M.D.,
JOHN MCCLAIN, M.D., KYLE GREGORY KROHN, M.D.,
JERRY JOHNSON, M.D., KRISHNA VEGIRAJU, M.D.,
DARWIN CLARK, M.D., SUNHIL GEORGE, M.D.,
GHAZALA B. KHAN, M.D., MELVIN COLE, M.D.,
GEORGE HENDERSON, III, H.J. SHANDS, III,
JACK SWEENY, RAY BALDWIN III,
GEORGE DOUGLAS MORSE, PATRICIA MCKENZIE,
PAUL PEREZ, GIBSON FRIESEN, RONA FRIESEN,
RANDY GEORGE, RAY POLK, H.E. STRIEDEL,
AND S.W. HENDERSON, III,**

Appellees

Appeal from the 217th Judicial District Court
of Angelina County, Texas. (Tr.Ct.No. CV-00216-10-12-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **SAUNG PARK, M.D.,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*