**Affirmed and Opinion filed September 24, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-11-00976-CV
NO. 14-11-00980-CV

**HERITAGE GULF COAST PROPERTIES, LTD. AND SUMER S. PINGLIA, Appellants and Cross-Appellees**

**V.**

**SANDALWOOD APARTMENTS, INC., JAIKISHIN S. BHAGIA, NANIK S. BHAGIA, AND WOODBRIDGE PROPERTIES, LLC,**
**Appellees and Cross-Appellants**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-64342**

**O P I N I O N**

Appellants, Heritage Gulf Coast Properties, Ltd. ("Heritage") and Sumer S. Pinglia ("Pinglia"), appeal certain portions of a judgment in favor of appellees, Sandalwood Apartments, Inc. ("Sandalwood"), Jaikishin S. Bhagia ("Jacky

Bhagia") and Nanik S. Bhagia ("Nick Bhagia"), on appellants' claims arising out of transactions involving certain apartment complexes. By cross-appeal, Sandalwood contends it is entitled to recover attorney's fees, and Woodbridge Properties, LLC ("Woodbridge") (a cross-appellant only) seeks its litigation expenses. We affirm.

## I. BACKGROUND

The parties have a history of involvement together in multiple transactions regarding various apartment complexes—as joint owners or in a buyer/seller relationship. Appellants' claims in the present case were based on transactions concerning two such complexes.

## A. The Taft Circle Apartments[1]

In March 2003, Pinglia and the Bhagias purchased the Taft Circle Apartments at a tax foreclosure sale. Pinglia presented evidence the three individuals agreed to share equally in the purchase price, expenses, profits, and losses. Subsequently, Pinglia and the Bhagias formed Woodbridge and transferred the Taft Circle Apartments to that entity. Woodbridge operated under the same agreement to share expenses, profits, and losses equally among its members. Woodbridge sold the Taft Circle Apartments in April 2006.

Pinglia alleges the Bhagias committed the following wrongful actions relative to the Taft Circle Apartments: (1) overcharged Pinglia by $9,514.93 for his share of the property taxes; (2) failed to inform Pinglia that the Bhagias received a payment when the former owner redeemed a portion of the property and withheld

---

[1] Only appellant Pinglia and the Bhagia appellees are parties to appellants' complaints on appeal concerning the Taft Circle Apartments. Appellant Heritage and appellee Sandalwood were not involved in this transaction. Pinglia presents no appellate complaints involving Woodbridge; it is only a cross-appellant with respect to its counterclaim for litigation expenses relative to Taft Circle Apartments, which is addressed later in this opinion.

Pinglia's share in the amount of $27,954.24; (3) withheld $25,600 from Pinglia's share of the proceeds after Woodbridge sold the Taft Circle Apartments because the Bhagias believed Pinglia had improperly taken the same amount as a broker's commission on the sale. Pinglia pleaded claims against the Bhagias for breach of fiduciary duty and under the Texas Theft Liability Act ("TLA").

The trial court submitted a jury question on breach of fiduciary duty but refused to submit a question under TLA. The jury (1) found a relationship of trust and confidence existed between Pinglia and the Bhagias, (2) found the Bhagias did not prove they complied with their fiduciary duties to Pinglia, and (3) assessed $12,800 against each Bhagia party for Pinglia's resulting damages.

## B. The Sandalwood Apartments[2]

At relevant times, Pinglia was managing member of the general partner of Heritage. The Bhagias were officers, directors, and shareholders of Sandalwood. On March 1, 2005, Heritage agreed by written contract to purchase the Sandalwood Apartments from Sandalwood for $2.3 million, via a down payment plus third-party financing. When Heritage could not obtain the third-party financing, the parties amended the contract to reduce the requisite down payment and provide for Sandalwood to finance the remainder.

The transaction first closed on February 17, 2006: Heritage signed a note in the amount of $1.85 million; Pinglia guaranteed the note; Heritage signed a Deed of Trust with Sandalwood as beneficiary; and Sandalwood signed a Special Warranty Deed. A second closing, with identical loan documents, occurred on April 26, 2006, to correct the name of the buyer.[3]

---

[2] Unlike the Taft Circle Apartments, all appellants (Pinglia and Heritage) and appellees (the Bhagias and Sandalwood) are parties to the claims concerning the Sandalwood Apartments.

[3] The buyer shown on the contract and first closing documents was "Heritaze Houston

3

Appellants' complaints concerning the Sandalwood Apartments transaction can be categorized into two areas.

First, appellants complain that appellees failed to facilitate the subordination of Sandalwood's first lien. Specifically, appellants allege the following. The property was derelict at the time of the sale, and Heritage needed a construction loan for rehabilitation. The day before the first closing, Pinglia told Jacky Bhagia during a verbal conversation that Heritage decided not to consummate the sale because Pinglia was concerned about the inability to obtain a construction loan. During the conversation, Bhagia replied that, if the sale closed, Sandalwood would subordinate its lien to enable Heritage to obtain a construction loan, and Bhagia asked for no material consideration in return.[4] Thus, appellants proceeded with the first closing. Thereafter, Heritage obtained a third-party commitment for a $1.4 million construction loan, contingent on that lender having a first lien and Sandalwood signing a subordination agreement. However, Sandalwood refused to subordinate unless Heritage paid considerably more of a down payment, which it could not afford. Thus, Heritage could not obtain the construction loan. After this refusal to subordinate, appellants proceeded with the second closing. Pinglia was forced to personally fund the repairs which delayed the project, causing damages in excess of $1.2 million.

Second, appellants allege appellees (1) failed to disclose the fact an insurance company sued the Bhagias for a fraudulent claim concerning the

Properties." Pinglia was unable to form the entity under that name, and it was changed to "Heritage Gulf Coast Properties, Ltd." for the second closing documents. Appellants renamed the complex "Las Palmas Apartments" and use this name in their brief. Consistent with the jury charge and the judgment, we will refer to the property as "the Sandalwood Apartments" throughout this opinion.

[4] It is undisputed the contract contained no provision regarding subordination of Sandalwood's lien.

4

property, (2) made misrepresentations about the occupancy rate of the complex, and (3) actively concealed plumbing and sewer problems on the property. Appellants alleged they would have further investigated before closing, or refrained from closing, if they had known of these issues that required Pinglia to spend more than $300,000 on repairs.

Appellants asserted claims for breach of fiduciary duty, statutory fraud in a real estate transaction, common-law fraud, and conspiracy based on all of the above alleged actions. Appellants also asserted a claim for breach of contract based only on the alleged promise to subordinate Sandalwood's lien.

The trial court ultimately heard three motions for summary judgment filed by appellees: (1) a traditional motion attacking the breach-of-contract claim on certain grounds; (2) another traditional motion attacking the breach-of-contract claim on additional grounds and all fraud claims; and (3) a no-evidence motion on all claims.

On the day trial began, the trial court signed an order granting the motions with respect to the following claims: (1) all claims based on appellees' alleged promise to subordinate Sandalwood's lien; (2) breach of fiduciary duty based on the allegation that appellees failed to disclose, made misrepresentations about, or actively concealed, pre-existing insurance claims, the occupancy rate, and certain conditions; and (3) conspiracy based on the foregoing dismissed claims.

After the summary judgment, fraud claims remained pertaining to appellees' alleged failure to disclose certain conditions of the property. The trial court granted a directed verdict on statutory fraud but submitted a jury question on common-law fraud. The jury failed to find Jacky Bhagia, while acting on behalf of Sandalwood, commited fraud.

5

## C. Post-Trial Proceedings with Respect to All Claims

By agreement of the parties, the trial court heard issues concerning attorney's fees after trial. In a post-trial motion, Sandalwood requested attorney's fees for successfully defending against appellants' claims concerning the Sandalwood Apartments, and Woodbridge requested litigation expenses concerning the Taft Circle Apartments. The trial court signed an order denying the requests. Subsequently, the trial court signed a supplemental order finding Sandalwood incurred $647,516 in reasonable and necessary attorney's fees but did not otherwise modify the previous order denying recovery of the fees.

On August 3, 2011, the trial court signed a final judgment. Consistent with its previous orders and the jury verdict, the trial court ordered that (1) Pinglia recover $12,800 each from Jacky Bhagia and Nick Bhagia for breach of fiduciary duty pertaining to the Taft Circle Apartments, (2) appellants take nothing on all other claims, (3) Pinglia recover his courts costs incurred in obtaining the judgment for breach of fiduciary duty, (4) Jacky Bhagia recover his costs incurred in defending the fraud claim submitted to the jury, and (5) all other requested relief was denied.

Appellants timely filed a motion for new trial, which was denied by written order. Appellees timely filed a motion to modify, correct, or reform the judgment, which was overruled by operation of law. Appellants filed this appeal, and appellees and Woodbridge filed a cross-appeal.

## II. APPELLANTS' ISSUES

Appellants present three issues on appeal. Their first two issues concern the Sandalwood Apartments; appellants challenge summary judgment on their claims for breach of fiduciary duty and fraud based on appellees' alleged promise to

subordinate Sandalwood's lien.[5]  Appellants' third issue concerns the Taft Circle Apartments; they contend the trial court erred by refusing to submit a jury question on Pinglia's claim under TLA.

## A.      Issue Regarding Fiduciary Relationship – The Sandalwood Apartments

In their first issue, appellants argue the trial court erred by determining there was no fiduciary relationship between the parties relative to the Sandalwood Apartments transaction.

### 1.      Standard of Review

In their no-evidence motion for summary judgment, appellees challenged appellants' claim for breach of fiduciary duty based on appellees' alleged promise to subordinate Sandalwood's lien.  After adequate time for discovery, a party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.  Tex. R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Unless the respondent produces summary-judgment evidence raising a genuine issue of material fact, the trial court must grant the motion for summary judgment.  Tex. R. Civ. P. 166a(i); *Urena*, 162 S.W.3d at 550.  When, as in the present case, the trial court's order granting summary judgment does not specify the basis for its ruling, we must affirm if any of the theories advanced are meritorious.  *Urena*, 162 S.W.3d at 550.  We review a summary judgment *de novo*.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in his favor.  *Id.*

---

[5] Appellants do not attack the take-nothing judgment on (1) their breach-of-contract claim based on the alleged promise to subordinate, and (2) any claims based on Sandalwood's alleged failures to disclose, misrepresentations about, or concealment of insurance claims, occupancy rate, and conditions on the property.

## 2.    Analysis

The elements of a claim for breach of fiduciary duty are (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In their motion, appellees asserted appellants have no evidence on any of these elements. We conclude appellants failed to present evidence raising a genuine issue of material fact on the existence of a fiduciary relationship in connection with the Sandalwood Apartments transaction.[6]

In certain formal relationships, such as attorney-client, partnership, or trustee relationships, a fiduciary duty arises as a matter of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). An informal fiduciary duty may arise from "a moral, social, domestic or purely personal relationship of trust and confidence." *Meyer*, 167 S.W.3d at 331. However, such an informal fiduciary relationship will not be created lightly. *Id.*; *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer*, 167

---

[6] In their stated issue, appellants suggest that, because the trial court erred by determining there was no fiduciary relationship, it also erred by granting no-evidence summary judgment on the claims for statutory and common-law fraud. However, appellees did not move for no-evidence summary judgment on grounds that the absence of a fiduciary relationship foreclosed fraud claims; rather, appellees asserted there was no evidence on the elements of fraud. Apparently, appellants construe the trial court's summary judgment on the fraud claims as based on no-evidence grounds concerning elements for which existence of a fiduciary relationship might be relevant. As discussed later herein, the trial court did not express the grounds on which it granted summary judgment on the fraud claims, and we uphold traditional summary judgment on those claims on a ground for which existence of a fiduciary relationship has no relevance. Accordingly, we evaluate the issue regarding existence of a fiduciary relationship as relevant only to the claim for breach of fiduciary duty.

8

S.W.3d at 330 (quoting *Schlumberger Tech. Corp.*, 959 S.W.2d at 176–77). "[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship." *Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see Meyer*, 167 S.W.3d at 331. When the underlying facts are undisputed, determining whether a fiduciary duty existed is a question of law, exclusively within the province of the court. *Meyer*, 167 S.W.3d at 330.

Appellants concede there was no formal fiduciary relationship created in conjunction with the Sandalwood Apartments transaction. Rather, appellants argue they presented evidence of an informal fiduciary relationship. Apparently, they seek to impose this fiduciary relationship between all parties—the individuals and the entities who were parties to the contract.

To support this contention, appellants assert that, during the transaction, Pinglia and the Bhagias had a pre-existing and contemporaneous fiduciary relationship relative to the Taft Circle Apartments. Pinglia and the Bhagias purchased the Taft Circle Apartments and transferred that property to Woodbridge approximately three years before the closings for the Sandalwood Apartments. Woodbridge sold the Taft Circle Apartments shortly after the closings for the Sandalwood Apartments. Appellants contend Pinglia and the Bhagias were partners at all times with respect to the Taft Circle Apartments because (1) they initially agreed to share equally in the purchase price, expenses, profits, and losses, and (2) this arrangement continued when they transferred the property to Woodbridge, although it was an LLC.[7]

---

[7] When challenging the summary judgment, appellants cite evidence presented in the summary-judgment proceeding and at trial. However, we cannot consider evidence presented solely at trial because appellant bore the burden to raise a fact issue in response to the motion for summary judgment. *See* Tex. R. Civ. P. 166a(i); *Urena*, 162 S.W.3d at 550. Appellants also note the jury found Pinglia and the Bhagias were fiduciaries relative to Taft Circle Apartments. However, this finding is not controlling on whether the trial court erred by granting summary

Appellants emphasize the principle that an informal fiduciary relationship will not be imposed in a business transaction absent proof that a relationship of trust and confidence existed before, and apart from, the transaction. *See id.* at 331; *Schlumberger Tech. Corp.*, 959 S.W.2d at 177. Appellants apparently translate this principle into the proposition that a fiduciary relationship will necessarily be imposed in a transaction if a fiduciary relationship existed before and apart from the transaction. Appellants suggest mere existence of a pre-existing and contemporaneous fiduciary relationship between Pinglia and the Bhagias relative to the Taft Circle Apartments automatically created a fiduciary relationship between all appellants and appellees relative to the Sandalwood Apartments transaction. We disagree.

We believe appellants have misconstrued the principle articulated by the Texas Supreme Court on this issue: "[W]hile a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from the agreement made the basis of the suit." *Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see Meyer*, 167 S.W.3d at 331. The court did not hold that existence of a fiduciary relationship between parties in one transaction will always give rise to a fiduciary relationship in any transaction involving those parties. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see also Meyer*, 167 S.W.3d at 331. The court made clear that the circumstances of the transaction must justify imposing a fiduciary relationship but also that the relationship must exist prior to,

---

judgment on the breach-of-fiduciary-duty claim relative to the Sandalwood Apartments based on the evidence before the court at the time. Regardless, we recite all evidence relied on by appellants because assuming it was presented in the summary-judgment proceeding, it failed to constitute evidence of a fiduciary relationship relative to the Sandalwood Apartments.

and apart from the agreement made the basis of the suit. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see also Meyer*, 167 S.W.3d at 331.

Regardless of any fiduciary relationship with respect to the Taft Circle Apartments, appellants failed to present evidence that the circumstances of the Sandalwood Apartments transaction justified imposing a fiduciary relationship on the parties. In this regard, appellants failed to present evidence that the Sandalwood Apartments transaction was anything but an arm's length transaction. Significantly, it is undisputed the nature of the relationship was different than that involved in the Taft Circle Apartments. Pinglia and the Bhagias, as individuals, worked together as partners in the Taft Circle Apartments to purchase and develop the property and share in expenses, profits, and losses. In contrast, the Sandalwood Apartments transaction involved a buyer-seller and financer-financee relationship in a complex business transaction worth more than $2 million. Further, the parties structured the Sandalwood Apartments sale as a transaction between two entities who were not involved in the Taft Circle Apartment—Sandalwood, a corporation, and Heritage, a limited liability entity formed to purchase the Sandalwood property, although Pinglia named himself and the Bhagias as parties to claims based on the transaction. Accordingly, mere evidence that Pinglia and the Bhagias may have had a fiduciary relationship in connection with the Taft Circle Apartments was insufficient to create a fiduciary relationship between any of the parties in the Sandalwood Apartments transaction.

As additional support for such a fiduciary relationship, appellants also presented evidence there was a long-term relationship among the parties relative to not only the Taft Circle Apartments but also two other complexes unrelated to the present case: (1) ten years before the closings for the Sandalwood Apartments, Pinglia purchased one such complex from Sandalwood, which twice subordinated

11

its lien to facilitate Pinglia in obtaining third-party construction loans; and (2) less than three years before the closings for the Sandalwood Apartments, Jacky Bhagia, Pinglia, and a third-party formed an LLC to purchase a complex, which they sold several years later. In his summary-judgment affidavits, Pinglia averred that, because of these other relationships, he trusted and relied on Jacky Bhagia when Jacky promised Sandalwood would subordinate its lien on the Sandalwood Apartments.

Again, appellants presented no evidence that the Sandalwood Apartments transaction was anything but an arm's length transaction. Consequently, Pinglia's mere subjective trust and past dealings with Sandalwood and the Bhagias in unrelated transactions were insufficient to create a fiduciary relationship between any parties in the Sandalwood Apartments transaction. *See Meyer*, 167 S.W.3d at 331; *Schlumberger Tech. Corp.*, 959 S.W.2d at 177; *see also Consol. Gas & Equip. Co. of Am. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966) ("[T]he fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create" a fiduciary relationship).

In summary, the trial court did not err by determining appellants presented no evidence of a fiduciary relationship with respect to the Sandalwood Apartments and granting summary judgment on their claim for breach of fiduciary duty. We overrule appellants' first issue.

## B. Claim for Fraudulent Inducement – The Sandalwood Apartments

In their second issue, appellants contend the trial court erred by granting summary judgment on their claim for fraudulent inducement.

Appellants' claims for common law fraud and statutory fraud in a real estate transaction were based on fraudulent inducement. According to appellants, they

12

were fraudulently induced into closing the transaction by the alleged promise to subordinate. Appellees challenged the fraud claims in a traditional motion, entitled "[Appellees'] Motion for Partial Summary Judgment on [Appellants'] Breach of Contract Claim based On Waiver, Novation and the Statute of Frauds, and Fraud and Statutory Fraud Claims Based on Waiver/Ratification." Appellees asserted the fraud claims were barred under the doctrine of waiver. Appellees also challenged the claims in their no-evidence motion for summary judgment, asserting appellants had no evidence on each element of the claims.

When, as in the present case, a movant asserts multiple grounds for summary judgment, and the trial court does not specify in the order the ground on which summary judgment was granted, the appellant must negate all grounds on appeal. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Lewis v. Adams*, 979 S.W.2d 831, 833 (Tex. App.—Houston [14th Dist.] 1998, no pet.). If the appellant fails to challenge all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment. *See Lewis*, 979 S.W.2d at 833; *Fields v. City of Texas City*, 864 S.W.2d 66, 68 (Tex. App.— Houston [14th Dist.] 1993, writ denied).

In the present case, appellants do not challenge the traditional ground based on the doctrine of waiver. In the motion, appellees asserted appellants waived any right to enforce the alleged promise to subordinate, or claim fraud due to the unfulfilled promise, because appellants' actions were inconsistent with claiming the right. Appellants relied on the following provisions in the Deeds of Trust executed by appellants during the first closing (after appellees' alleged verbal promise to subordinate) and the second closing (after Sandalwood's refusal to subordinate):

- [Heritage] agrees to . . . preserve the lien's priority as it is established in this deed of trust . . . .

- This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

On appeal, appellants state the following as their issue challenging summary judgment on the fraud claims: "The trial court erred in holding that the 'as is' clause in the earnest money contract and the disclaimer of warranties regarding the condition of the property in the special warranty deed operated as a bar to Appellants' claims for fraudulent inducement." Appellants present two sub-issues concerning these two clauses: (1) they did not constitute a valid disclaimer of reliance; and (2) they concerned the condition of the property and did not extend to the promise to subordinate. Appellants also present a third sub-issue which concerns different clauses than those referenced in the stated issue: the merger clauses in the contract and Special Warranty Deeds cannot bar parol evidence of fraudulent statements which induced appellees into executing the closing documents. None of these issues are challenges to the summary-judgment ground based on waiver by virtue of the two provisions in the Deeds of Trust regarding priority of Sandalwood's lien.

In the body of their argument, appellants briefly suggest those two provisions do not defeat appellants' claims. However, appellants cite Sandalwood's bench brief arguing appellants' claims were barred by the parol evidence rule and merger doctrine because the alleged oral promise to subordinate was inconsistent with the provisions in the Deeds of Trust. Appellants do not specifically advance any argument or cite any authority on whether these provisions demonstrated waiver, which was a separate contention. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (concluding that, to adequately brief an appellate contention, the

14

appellant must present some specific argument and analysis showing the record and the law support the contention); *see also* Tex. R. App. P. 38.1(i).

Appellants contend the trial court specified in its order it granted summary judgment on the grounds challenged by appellants. We disagree. Appellants emphasize the portion of the order in which the trial court listed the claims on which it was granting summary judgment. However, the trial court did not expressly state the grounds on which it granted summary judgment for each claim.

Appellants also point to another portion of the order granting a portion of appellees' motion in limine. The trial court previously denied a request in the motion in limine that appellants be precluded from mentioning the alleged promise to subordinate based on, inter alia, the parol evidence rule and merger doctrine. In its order, after granting summary judgment, the court ruled:

> IT IS FURTHER ORDERED THAT the Court's order previously denying request number 8 (regarding the Parol Evidence Rule and Merger Doctrine) of [Appellees'] Second Amended Motion *in Limine* IS HEREBY WITHDRAWN. The Court HEREBY MODIFIES, IN PART, ITS ORDER granting [Appellees'] Second Amended Motion *in Limine,* and GRANTS request number 8 of [Appellees'] Second Amended Motion *in Limine.*

Appellants assert this ruling demonstrates the trial court granted summary judgment on the ground appellants' claims were barred under the parol evidence rule and merger doctrine. We disagree.

The quoted paragraph was only a ruling on the motion in limine. The trial court did not state it was granting the motion in limine based on the parol evidence rule and merger doctrine because it had also granted summary judgment on those grounds. Further, it is not implicit from the limine ruling that the trial court granted summary judgment on those grounds. We cannot foreclose the possibility

the trial court granted summary judgment on the waiver ground, yet also excluded any reference to the alleged promise to subordinate to the extent appellants would offer it to support claims proceeding to trial—for example, to support the claims regarding the condition of Sandalwood Apartments or claims pertaining to the Taft Circle Apartments by suggesting appellees generally engaged in fraudulent conduct.[8]

Therefore, appellants were required to challenge all grounds asserted in the motions for summary judgment. Because appellants do not challenge the waiver ground, we must uphold the summary judgment.[9] Accordingly, we overrule appellants' second issue.

## C. Claim under TLA – The Taft Circle Apartments

In appellants' third issue, Pinglia contends the trial court erred by refusing to submit a jury issue under TLA because Pinglia pleaded and presented evidence to support this claim.

The trial court must submit a jury question if raised by the pleadings and the evidence. Tex. R. Civ. P. 278; *Grohman v. Kahlig*, 318 S.W.3d 882, 888 (Tex. 2010). Under TLA, a person who commits theft is liable for resulting actual damages, additional damages not to exceed $1,000, courts costs, and attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.003(a), 134.005(a)(1), (b) (West

---

[8] Appellees did not move for traditional summary judgment based on the parol evidence rule and merger doctrine or the other grounds challenged by appellants in their first two sub-issues—that the "as is" clause and disclaimer of warranties barred appellants' claims. Rather, these arguments were presented in appellees' bench briefs, filed within a week before the trial court granted summary judgment and trial began.

[9] Appellees assert appellants also fail to challenge summary judgment on the grounds of indefiniteness, lack of essential elements, statute of frauds, and novation rule. Appellees moved for summary judgment on the breach-of-contract claims on all these grounds, but not the fraud claims. Thus, appellants are not required to challenge these grounds on appeal.

16

2011). "Theft" includes unlawfully appropriating property—without the owner's effective consent—with intent to deprive the owner of the property. *See id.* § 134.002(2) (West 2011); Tex. Penal Code Ann. § 31.03(a), (b) (West Supp. 2012).

We need not decide whether the trial court erred by refusing to submit a jury question under TLA because we conclude any error was harmless. If a trial court errs by refusing to submit a jury question, we do not reverse absent harm. *See 4901 Main, Inc. v. TAS Auto., Inc.*, 187 S.W.3d 627, 631 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) ("The [harmless error] rule applies to all errors."). Harm occurs when the error in the charge probably caused the rendition of an improper judgment, or prevented the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a); *4901 Main, Inc.*, 187 S.W.3d at 631. To determine whether harm occurred, we must consider the entire record, including the pleadings, the evidence, and the charge. *4901 Main, Inc.*, 187 S.W.3d at 631.

Pinglia asserts he pleaded and presented evidence of the following actions by the Bhagias which supported liability under TLA: (1) overcharging Pinglia by $9,514.93 for his share of taxes due on the property; and (2) withholding Pinglia's share of the redemption proceeds in the amount of $27,954.24. Our review of the entire record reflects that, in response to the jury questions regarding breach of fiduciary duty with respect to the Taft Circle Apartments, the jury rejected Pinglia's complaint regarding those two actions. Those actions formed the basis for both the breach-of-fiduciary-duty and TLA claims. However, Pinglia pleaded a third action to support breach of fiduciary duty which was not a basis for the TLA claim—when Woodbridge sold the Taft Circle Apartments, the Bhagias

wrongfully withheld $25,600 from Pinglia's share of the proceeds because they believed Pinglia had improperly taken the same amount as a broker's commission.

The jury found liability for breach of fiduciary duty based on only this third action, despite Pinglia's urging the jury to find liability for all three actions. In opening statements, Pinglia mentioned all three actions. Pinglia then presented evidence to support all of the claims. In closing arguments, Pinglia first summarized his contentions regarding overpayment of property taxes and the withholding of his share of the redemption proceeds. He then argued, "The bigger issue is the commissions." Further, the jury question on breach of fiduciary duty would have encompassed all three actions.[10]

---

[10] The question on breach of fiduciary duty instructed in pertinent part:

> To prove they complied with their [fiduciary] duties, Jaikishin Bhagia and/or Nanik Bhagia must show:
>
> a.      the transactions in question were fair and equitable to Sumer Pinglia;
>
> b.      Jaikishin Bhagia and/or Nanik Bhagia made reasonable use of the confidence that Sumer Pinglia placed in Jaikishin Bhagia and/or Nanik Bhagia.
>
> c.      Jaikishin Bhagia and/or Nanik Bhagia acted in the utmost good faith and exercised the most scrupulous honesty towards Sumer Pinglia;
>
> d.      Jaikishin Bhagia and/or Nanik Bhagia placed the interests of Sumer Pinglia before his own, did not use the advantage of his position to gain any benefit for themselves at the expense of Sumer Pinglia, and did not place himself in any position where his self-interest might conflict with his obligations as a fiduciary; and
>
> e.      Jaikishin Bhagia and/or Nanik Bhagia fully and fairly disclosed all important information to Sumer Pinglia concerning the transactions.

18

The jury awarded only $25,600 in damages for breach of fiduciary duty ($12,800 against each Bhagia party)—the amount the Bhagias allegedly withheld from Pinglia's full share of the sales proceeds because of the dispute over the commission. Accordingly, the jury rejected Pinglia's claim for damages pertaining to his overpayment of property taxes and the Bhagias' withholding his share of the redemption proceeds. Therefore, any error in failing to submit a TLA question based on these same actions was harmless. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam) (stating that error in omission of jury issue is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment); *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 688–90 (Tex. App.—San Antonio 2012, no pet.) (recognizing jury's answer to one question may render harmless trial court's error in refusing to submit another question). We overrule appellants' third issue.

## III. CROSS-APPEAL

In the cross-appeal, (1) Sandalwood contends it is entitled to recover its attorney's fees for successfully defending appellants' claims related to the Sandalwood Apartments transaction,[11] and (2) Woodbridge contends it is entitled to recover its litigation expenses from Pinglia.

### A. Sandalwood's Attorney's Fees

Under Texas law, a party may not recover attorney's fees unless authorized by contract or statute. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). Appellees contend they are entitled to recover attorney's fees (1) under a provision in the Sandalwood Apartments contract, and (2) as sanctions authorized by statute because the suit was groundless.

---

[11] Although appellants are now cross-appellees, we will continue to call them "appellants," consistent with our previous references.

### 1. Request for Attorney's Fees under the Contract

After trial, Sandalwood filed a motion requesting attorney's fees under the following provision in the contract:

> ATTORNEY'S FEES: If Buyer, seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 16 survives termination of this contract.

There is no dispute this provision would encompass Sandalwood's attorney's fees for successfully defending against appellants' contract and tort claims related to the Sandalwood Apartments transaction if Sandalwood is a "prevailing party" and otherwise entitled to recover such fees. *See Chevron Phillips Chem. Co., L.P. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69–70 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Rich v. Olah*, 274 S.W.3d 878, 888–89 (Tex. App.—Dallas 2008, no pet.).

### a. Grounds for Trial Court's Order

As a preliminary matter, we must address an issue regarding the grounds on which the trial court may have denied the request for fees under the "prevailing party" contractual provision.

At the hearing on Sandalwood's motion, appellants objected that (1) Sandalwood did not plead for recovery of attorney's fees under the provision, (2) Sandalwood did not list the theory in response to appellants' requests for disclosure, and (3) Sandalwood was not a prevailing party. The trial court orally remarked it believed the pleading was sufficient and expressed concern about whether the theory was adequately disclosed. The court did not definitively comment on whether Sandalwood was a prevailing party.

20

The trial court stated it would take the disclosures issue under advisement but hear evidence regarding the amount of Sandalwood's attorney's fees, subject to appellants' objection. After hearing evidence, the trial court deferred a ruling and stated it would entertain post-hearing briefing. Subsequently, the trial court signed its order refusing to award the fees, without expressing a reason. The trial court then signed its supplemental order, finding the reasonable and necessary fees were $647,516—an amount within the evidence offered by appellants.

The parties devote some portions of their appellate arguments to the dispute regarding adequacy of the disclosures. However, the trial court's supplemental order implicitly reflects it did not deny the request for attorney's fees because the "prevailing party" theory was not adequately disclosed. Specifically, the consequence of a failure to timely disclose a theory of recovery in response to a proper request is exclusion of the evidence unless an exception is satisfied. *See* Tex. R. Civ. P. 193.6(a). However, the order shows the trial court did not exclude evidence of the attorney's fees incurred by Sandalwood because it made a fact finding on an amount of reasonable and necessary fees "based on the evidence of reasonable and necessary attorneys' fees incurred by Sandalwood in this case in relation to the Contract." Thus, the trial court implicitly overruled appellants' objection to the evidence of attorney's fees on the ground the "prevailing party" theory had not been disclosed. The written order controls over the trial court's oral comments questioning adequacy of the disclosures. *See In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Accordingly, the remaining grounds on which the trial court may have denied the award of attorney's fees were the alleged lack of a pleading or the notion that Sandalwood did not constitute a prevailing party.

21

Sandalwood emphasizes the trial court's oral remarks that the pleading was sufficient. However, the trial court did not issue findings of fact and conclusions of law. Findings of fact recited in a judgment are probative unless they are supplanted by separately filed findings. *In re C.A.B.*, 289 S.W.3d 874, 880–81 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We may not consider the trial court's oral comments at the hearing as a substitute for findings of fact and conclusions of law. *In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *Chevron Phillips Chem. Co.*, 346 S.W.3d at 74. Because the court did not make findings and conclusions, other than indicating in its order that inadequate disclosure was not the reason for its decision, we must uphold the judgment on any valid legal theory supported by the evidence. *See In the Interest of W.E.R.*, 669 S.W.2d at 717; *In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We conclude Sandalwood did not plead for recovery of attorney's fees under the prevailing party provision of the contract.[12]

### b. Sandalwood's Pleading

A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Herrington v. Sandcastle Condominium Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see* Tex. R. Civ. P. 301 (providing the "judgment of the court shall conform to the pleadings"); *R. Conrad Moore & Assoc., Inc. v. Lerma*, 946 S.W.2d 90, 96 (Tex. App.—El Paso 1997,writ denied) (affirming trial court's refusal to award attorney's fees under "prevailing party" provision of real estate contract because defendant failed to plead that theory). The issue of attorney's fees under

---

[12] Because of our conclusion regarding Sandalwood's pleading, we need not address appellants' contention regarding "prevailing party" status.

22

the "prevailing party" provision of the contract was not tried by consent; appellants have objected to the theory since it was raised in Sandalwood's post-trial motion.

Texas follows a "fair notice" standard for pleading, meaning we consider whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Id.* at 897. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. *Id.* A petition is construed liberally in favor of the pleader if no special exceptions are filed. *Id.* "But, 'liberally' does not require a court to read into a petition what is plainly not there." *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 199 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Sandalwood contends its counterclaim sufficiently included a request for attorney's fees under the "prevailing party" provision of the contract. Much of appellants' live counterclaim was a recitation of its own causes of action against appellants, including breach-of-contract and tort claims relative to the Sandalwood Apartments transaction.[13] The following are the only paragraphs pertaining to attorney's fees:

### VIII.
### Cause of Action No. 6 – Frivolous Lawsuit

. . .

54. [Appellants] have filed a lawsuit almost three years after the sale of the Sandalwood Apartments for an improper purpose, including to harass [Sandalwood] or cause unnecessary delay or to

---

[13] These substantive causes of action were non-suited or otherwise not submitted to the jury, leaving only the counterclaim for attorney's fees.

23

implicitly threaten [Sandalwood] with increased costs of litigation. [Appellants'] claims are frivolous and have no likelihood of having evidentiary support. [Appellants'] affirmative claims are groundless and were filed in bad faith.

55. Accordingly, [Sandalwood] seek[s] to recover all costs of inconvenience, harassment and out-of-pocket expenses incurred in this litigation, including but not limited to court costs, attorneys fees and all other costs associated with this lawsuit.

## XI.
## Attorneys' Fees

59. Pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE chapters 38.001 *et. seq.* and 10.001, *et seq.*, [Sandalwood] may recover reasonable and necessary attorneys' fees based on [its] claims for breach the Contract [sic], bad faith pleadings, and as an element of punitive damages.

60. All conditions precedent to recovery of fees have occurred or will occur prior to trial.

61. [Sandalwood] retained counsel and [is] entitled to attorneys' fees under Texas law. [Sandalwood] [has] incurred and continue[s] to incur reasonable and necessary attorneys' fees together with court costs and litigation expenses. [Sandalwood] seek[s] [its] attorneys' fees and investigative costs, together with court costs.

62. Further, [Woodbridge] is entitled to recover 1/3 of its legal costs associated with defending against [Pinglia's] claims pursuant to the organizational documents and division of costs within [Woodbridge].

Section VIII clearly related to recovery of defense fees because appellants purportedly filed a groundless suit and did not encompass recovery under the "prevailing party" provision of the contract. Then, in section XI, Sandalwood requested attorney's fees under three express theories: (1) Texas Civil Practice and

24

Remedies Code Chapter 38, which would authorize recovery of fees for Sandalwood successfully prosecuting its own contract counterclaims but not for defending against appellants' claims; *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008); *Chevron Phillips Chem. Co.*, 346 S.W.3d at 70; (2) as an element of punitive damages, a request based on Sandalwood successfully prosecuting its own counterclaims; and (3) as sanctions under Texas Civil Practice and Remedies Code Chapter 10, which, if appropriate, would encompass fees for successfully defending against appellants' purportedly frivolous claims (as requested in Section VIII); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006 (West 2002). Sandalwood did not specifically request attorney's fees under the "prevailing party" provision of the contract for successfully defending against appellants' claims.

However, Sandalwood contends paragraph 61 was sufficient to constitute a pleading under such theory. Sandalwood relies on authority recognizing that a general allegation seeking recovery of attorney's fees is sufficient to place the opposing party on notice the pleader seeks such fees and it is incumbent on the opposing party to object, by special exception, to the lack of specificity. *See, e.g.*, *Bullock v. Regular Veterans Ass'n of U.S., Post No. 76*, 806 S.W.2d 311, 314 (Tex. App.—Austin 1991, no writ). More specifically, Sandalwood relies on *Smith v. Deneve*, 285 S.W.3d 904, 916–17 (Tex. App.—Dallas 2009, no pet.), holding the following general paragraph was sufficient to support recovery of fees under any applicable theory:

> It was necessary for Respondent to secure the services of an attorney to prepare and defend this suit. Judgment for attorney's fees, expenses, and costs through final judgment after appeal should be granted against Petitioner and in favor of Respondent for the use and benefit of Respondent's attorney; or in the alternative, Respondent requests that reasonable attorney's fees, expenses, and costs through

25

final judgment after appeal be taxed as costs to be ordered paid directly to Respondent's attorney, who may enforce the order in the attorney's own name. Respondent requests post-judgment interest as allowed by law.

However, we must cite the entire principle recognized by the *Smith* court. Although a general pleading is sufficient to support recovery of fees under any applicable theory, "'[w]hen a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, unpleaded ground.'" *Id.* at 916 (quoting *Kreighbaum v. Lester*, No. 05–06–01333–CV, 2007 WL 1829729, at *2 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.). Additionally, in a petition, "[t]he specific allegation controls over the general allegation." *Monsanto Co. v. Milam*, 494 S.W.2d 534, 536 (Tex. 1973); *see Park v. Mem. Health Sys. of E. Tex.*, 397 S.W.3d 283, 288 (Tex. App.—Tyler 2013, pet. filed); *A.G. Servs., Inc. v. Peat, Marwick, Mitchell & Co.*, 757 S.W.2d 503, 507 (Tex. App.—Houston [1st Dist.]1988, writ denied).[14]

Sandalwood's contention depends on reading paragraph 61 in isolation instead of in context. Sandalwood did not make solely a general request for attorney's fees. Rather, paragraph 61 is contained within an entire section of the

---

[14] The above-cited cases from sister courts did not articulate a standard of review applicable to determining whether a pleading sufficiently requested attorney's fees. *See Smith*, 285 S.W.3d at 916–17; *Kreighbaum*, 2007 WL 1829729, at *1–4; *R. Conrad Moore & Assoc., Inc.*, 946 S.W.2d at 96; *Bullock*, 806 S.W.2d at 314–15. Additionally, in *Monsanto Co.*, the court did not recite a standard of review applicable to sufficiency of pleadings in general. *See* 494 S.W.2d at 536. In other contexts, several courts have reviewed a trial court's decision regarding sufficiency of pleadings for abuse of discretion. *See, e.g.*, *Montes v. Filley*, 359 S.W.3d 260, 264 (Tex. App.—El Paso 2011, no pet.) (reviewing whether pleading requested certain child support order); *Ross v. Goldstein*, 203 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] 2006 no pet.) (reviewing ruling on special exceptions). We need not decide the definitive standard of review because our conclusion would be the same under the de novo or abuse of discretion standards, based on the law holding the specific controls over the general. *See Monsanto Co.*, 494 S.W.2d at 536; *Kreighbaum*, 2007 WL 1829729, at *2–3; *see also In re Poly–America, L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (orig. proceeding) (recognizing that, because trial court has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law constitutes an abuse of discretion).

pleading requesting attorney's fees under specific theories. Sandalwood first set forth those specific theories in paragraph 59, which allegations control over the more general paragraph 61. *See Monsanto Co.*, 494 S.W.2d at 536 (holding plaintiff pleaded defendant's negligence based only on one specific act and pleading did not support recovery based on other acts; plaintiff set forth specifically the one act, and subsequent general allegation that "incident made the basis of this suit was proximately caused by the negligence of the defendants" was referable to and controlled by the preceding specific allegation); *Park*, 397 S.W.3d at 288; *A.G. Servs., Inc.*, 757 S.W.2d at 507.

In this regard, the present case is more akin to *Kreighbaum* (which was distinguished in *Smith*) than to *Smith*. In *Smith*, the court held a pleading sufficiently supported a request for attorney's fees under a Family Code provision permitting a court to award costs in a divorce. 285 S.W.3d at 916–18. The court rejected the opposing party's suggestion that the pleading requested fees only under Texas Rule of Civil Procedure 13. *Id.* at 916–17. The court relied on the following: (1) a provision in the "**COUNTERCLAIM**" section of the pleading requesting fees for a groundless claim was not specifically based on Rule 13 and resembled other statutory fee-shifting provisions; and (2) there was a separate section entitled "**ATTORNEY'S FEES, EXPENSES, COSTS, AND INTEREST**," containing only the general request for attorney's fees quoted above. *See id.* In contrast, as discussed above, Sandalwood's pleading included an "Attorneys' Fees" section containing express theories for recovery of attorney's fees before the more general paragraph on which Sandalwood relies.

In *Kreighbaum*, the court rejected the defendants' argument that they pleaded for recovery of attorney's fees under the "prevailing party" provision of

27

the parties' contract. 2007 WL 1829729, at *2–3. The pleading contained the following sections:

## IV.
### Counterclaim for Groundless DTPA Lawsuit

10. Defendants would show that Plaintiff's claims are groundless in fact or law, brought in bad faith, or brought for the purpose of harassment. Pursuant to Section 17.50(c) of the Texas Business & Commerce Code, Defendants are entitled to recover their attorney's fees and costs incurred in the defense of this lawsuit.

## V.
### Prayer for Relief

11. WHEREFORE, Defendants respectfully pray that upon final trial of this lawsuit, the Court (a) dismiss Plaintiff's Original Petition with prejudice, (b) deny all relief requested by Plaintiff, (c) award Defendants their attorney's fees and costs, and (d) award Defendants such other and further relief to which they show themselves entitled.

*Id.* at *2. Citing *Monsanto Co.*, among other authority, the court emphasized that, although the defendants' prayer for relief contained a general request for attorney's fees, their preceding counterclaim section specifically set forth the DTPA provision as the basis for the request. *See id.* at *2–3. Therefore, the court held (1) an opposing attorney would read the request in the prayer as based on the statement in the counterclaim that the defendants were entitled to recover fees under the DTPA; and (2) an opposing attorney would not interpret the pleading as seeking attorney's fees under the contract because the pleading did not mention that theory. *Id.* at *3.

Likewise, an opposing party would construe the request in paragraph 61 of Sandalwood's pleading as based on the specific theories previously listed in paragraph 59. Paragraph 61 refers to recovery of fees under "Texas law," i.e., a

28

summary of the statutes cited in paragraph 59, and does not mention fees under the contract. Moreover, an opposing party would construe paragraph 61, as well as 60, as providing support for the specific theories listed in paragraph 59. Paragraphs 60 and 61 allege the elements a party must satisfy to recover fees under Civil Practice and Remedies Code Chapter 38 for successfully prosecuting its own claims. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001, .002 (providing party must, inter alia, be represented by counsel and present the claim to the opposing party, and the fees must be reasonable and necessary).

Considering Sandalwood expressly set forth specific theories under which it was seeking attorney's fees, an opposing party would not ascertain Sandalwood was seeking fees under a theory omitted from the list. An opposing party would conclude Sandalwood would have expressly mentioned the "prevailing party" provision of the contract if it were seeking fees for successful defense under that theory. This conclusion is further supported by the fact that (1) Sandalwood expressly pleaded one theory for recovering fees for successful defense of appellants' claims; and (2) in paragraph 62, Woodbridge pleaded a specific contractual provision under which it was seeking attorney's fees concerning the Taft Circle Apartments. Consequently, we reject the contention that paragraph 61 functioned as a "catch-all" pleading for recovery of attorney's fees under any applicable theory.

Finally, we also disagree with Sandalwood's suggestion that appellants were required to specially except if appellants sought further specificity regarding the theories on which Sandalwood requested attorney's fees. Again, such contention is contingent on an incorrect conclusion that Sandalwood made merely a general request for attorney's fees, to which appellants needed to specially except if they wished to narrow the theories for recovery. Similarly, there was no defect in the

29

pleading calling for special exceptions. *See Auld*, 34 S.W.3d at 896 (stating an opposing party should use special exceptions to identify defects in a pleading so that they may be cured, if possible, by amendment). Instead, once Sandalwood pleaded three specific theories, appellants were entitled to rely on those allegations as notice of the theories on which fees were sought. Appellants had no reason to specially except and, adverse to their own interest, alert Sandalwood to another possible theory.

In summary, because Sandalwood did not plead for recovery of attorney's fees under the "prevailing party" provision of the contract, the trial court did not err by refusing to award attorney's fees under that theory.

### 2. Request for Attorney's Fees as Sanctions

Sandalwood also contends it was entitled to its attorney's fees as sanctions under sections 10.001 and .002 of the Texas Civil Practice and Remedies Code because appellants' claims were allegedly groundless. In its counterclaim and post-trial motion, Sandalwood requested attorney's fees under these sections.

Section 10.001 provides, in pertinent part:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
. . .
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

30

Tex. Civ. Prac. & Rem. Code Ann. § 10.001(2), (3). Section 10.002 provides a party may move for sanctions, describing the specific conduct violating section 10.001. *Id.* § 10.002(a). The court may award to a party prevailing on a motion under section 10.002 "if no due diligence is shown . . . all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." *Id.* § 10.002(c). We review a trial court's ruling on a request for sanctions under section 10.002 for abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

Sandalwood generally asserts that appellants' claims based on the alleged promise to subordinate were groundless in law because the trial court granted summary judgment. Sandalwood generally suggests appellants' claims for fraud regarding the condition of the property were groundless because they were not supported by the evidence.

We disagree that the mere fact a trial court granted summary judgment, or a jury rejected, a plaintiff's claims justifies sanctions under sections 10.001 and 10.002. The inquiry under section 10.001 is not whether the claim was groundless in law or evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001. Rather, the inquiry is whether "**to the signatory's best knowledge, information, and belief, formed after reasonable inquiry** . . . [the] claim . . . is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" or "has evidentiary support or . . . is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *See id.* § 10.001(2)–(3) (emphasis added). Sandalwood cites no evidence, and presents no analysis, regarding appellants' counsel's "best knowledge, information, and belief, formed after reasonable inquiry" concerning the legal basis and evidentiary support for appellants' claims.

31

*See id.* Accordingly, Sandalwood fails to demonstrate the trial court abused its discretion by refusing to award attorney's fees as sanctions.

**B.      Woodbridge's Litigation Expenses**

Finally, in appellants' post-trial motion, Woodridge sought to recover one-third of its litigation expenses from Pinglia under Woodbridge's governing regulations. According to Woodbridge, the regulations provide that all allocations of income, gain, deduction, loss and credit shall be made in accord with the interest of each member. Therefore, Woodbridge contends Pinglia, who held a 33.33% interest in Woodbridge, is responsible for one third of its litigation expenses.

It is unclear what expenses Woodbridge seeks. Pinglia's claims against Woodbridge sought access to its books. In his post-trial filings, Pinglia asserts he successfully obtained such relief via this litigation. Nonetheless, at the hearing on attorney's fees, Woodbridge presented no evidence of any expenses it incurred, for which Pinglia was purportedly responsible under the regulations. When the trial court confirmed the issues to be addressed, counsel for Sandalwood and Woodbridge made the following statement regarding Woodbridge's request: "That is our last argument. We are not really here to make that one today." No evidence or argument was thereafter presented on Woodbridge's request. Consequently, the trial court did not err by denying the request.

In summary, we overrule the issues presented by Sandalwood and Woodbridge in their cross-appeal.

## IV. CONCLUSION

Having overruled all issues in the appeal and cross-appeal, we affirm the trial court's judgment in its entirety.

/s/    John Donovan
        Justice

Panel consists of Justices Boyce, Donovan, and Simmons.[15]

---

[15] Senior Justice Rebecca Simmons sitting by assignment.